BRIGGS *v.* DAVIS, Special Receiver, &c.

The grantees of land in trust for creditors re-conveyed to the grantor by deed reciting that the trusts had been executed, when in fact there were *cestuis que trust* entitled to a sale and distribution of the proceeds. The debtor then mortgaged the land for a valuable consideration to one having constructive but not actual notice of the trust and re-conveyance: *Held*, that the mortgagee took subject to the execution of the trust.

The purchaser takes no benefit from the declaration of the trustees that the trust has ceased, but must ascertain at his peril that such is the fact.

The re-conveyance being in contravention of the trust is absolutely void, and the legal estate remained in the trustees. The mortgagee, therefore, is not within the principle which protects the *bona fide* purchaser of a legal title against a prior equity, of which he had no notice.

The debtor, however, irrespective of the re-conveyance, had the legal estate as against all persons except the trustees and those claiming under them. The mortgage, therefore, is not void, but entitles the mortgagee to redeem the land by satisfying the claims of the *cestuis que trust.*

The mortgagee, though a proper, is not a necessary party to an action by the beneficiaries of the trust to enforce its execution.

The purchaser under the judgment in such an action, to which the mortgagee was not a party, may litigate with him the validity and extent of

his lien, and upon redemption or sale is entitled to the amount due the beneficiaries whom he represents, not being limited to the amount for which he purchased.

APPEAL from the Supreme Court. The plaintiff brought his suit against John J. Palmer, the former special receiver of the North American Trust and Banking Company, in whose place the present defendant has been substituted *pendente lite*, to obtain a judgment declaring void, and to procure the cancellation of, a mortgage which had been executed to the president of that corporation for its use, by one Cornelius Masten, on the 1st day of November, 1838. The case was tried before Mr. Justice WELLES, in December, 1853, when the following facts were established: Masten being the owner of the mortgaged premises in controversy and of much other property, real and personal, on the 21st day of April, 1834, executed a conveyance of all his property, in trust to sell the same for the benefit of his creditors, to Joel Dorman, James C. Robinson and Evert Van Buren as trustees. The creditors were to be paid according to certain preferences, and in the second class certain notes were directed to be paid, upon which Dorman was an indorser for the accommodation of Masten. The trustees entered upon their duties, and on the 26th of March, 1836, Dorman died. On the 17th of September, 1838, the surviving trustees, Robinson and Van Buren, executed to Masten a deed which recited the assignment and added, "and whereas the said trust has been executed;" which deed in terms, in consideration of ten dollars, released, assigned, and surrendered to Masten all the real and personal property embraced in the assignment which had not been sold and disposed of in pursuance of said trust. Afterwards, and about November 1st, 1838, Masten purchased of the North American Trust and Banking Company its stock to the amount of $9,000; and to secure the purchase money, he gave his bond to the president of the company, and together with his wife, executed a mortgage to said president upon the premises in controversy, being one of those parcels of land which passed by the re-conveyance, if it was operative, and which was a part of the property embraced in the assignment.

Briggs *v.* Davis.

It is this mortgage which the plaintiff ought to have canceled. The assignment, re-conveyance and mortgage were respectively recorded at or about the time they were executed. The Trust Company had no actual notice of the assignment or the re-transfer, the county clerk having omitted to notice those instruments in his abstracts of title furnished to the counsel of the company. It was proved on the trial, and the fact was found by the judge, that certain liabilities of Masten provided for in the assignment, and for which Dorman was Masten's surety, were left unpaid, and that Dorman in his lifetime, and his administrators after his death, had paid thereon an amount exceeding $4,000.

In April, 1839, Prosser and others, the administrators of Dorman, filed their bill in the Court of Chancery against Masten and Robinson and Van Buren, to collect the amount which had been paid by their intestate and themselves on account of these liabilities. It set forth the foregoing facts, except the mortgage to the Trust Company, the re-assignment being stated on information, and averred that at the time of Dorman's death there remained sufficient trust property in the hands of the assignees to pay all the debts of Masten mentioned in the first and second classes of the assignment. It alleged that there was "still a large amount of property, real and personal, which was assigned by the said Cornelius Masten, remaining undisposed of in the hands of said Robinson and Van Buren, some or one of them, unless the said Robinson and Van Buren have re-conveyed the same to the said Cornelius Masten, which said property, according to the provisions and conditions of the said assignment, is liable, and should be sold and disposed of to pay and satisfy" the moneys advanced by Dorman, and by them as his administrators, on account of the said preferred debts. The bill claimed that said moneys were an equitable lien upon the trust property, and that they ought to be paid by the surviving assignees out of said property. The bill stated, upon information, that the surviving trustees had re-conveyed the property to Masten, and that he had incumbered or was about incumbering it to a large amount. It prayed that an account

might be taken of the complainants' demands, and that Robin-son and Van Buren might be decreed to pay to them what upon such accounting might appear to be due, with costs; and for general relief. The case was heard in the first instance upon pleadings and proofs before a Vice-Chancellor, and after-wards on appeal before the Chancellor, who reversed the decree of the Vice-Chancellor and made a decretal order in the case. It was mainly devoted to the principles upon which the account was to be taken, about which there was a good deal of compli-cation, but in substance it required the ascertainment of the amount owing to the complainants as the representatives of Dorman on account of the debts preferred in the second class of the assignment. It directed that if Robinson and Van Buren would stipulate that the property embraced in the re-assignment was sufficient to pay the debts owing to the complainants, the referee should report that fact to the court: if not, he was to take an account of all the assigned property and of all payments made by the surviving trustees. He was to report a descrip-tion of the real estate conveyed by the assignment which was embraced in the re-assignment to Masten, and to state what part, if any, Masten had since sold or incumbered, and the amount of the incumbrance, "and the present condition and value of the premises undisposed of by the defendant Masten ; to the end that upon the coming in and confirmation of the report, in case a balance should be found due to the complainants as such administrators as aforesaid, the proper decree may be entered for charging the real estate unsold with such balance : it being hereby declared (as the decree stated) that the said real estate in the hands of the said Masten is primarily liable for the payment of the said balance if it cannot be recovered from him personally ; and that the defendants, Robinson and Van Buren, are secondarily liable for such balance to the amount of the value of the effects re-assigned by them to Masten at the time of said re-assignment, in case the said balance cannot be collected from the property and effects re-assigned, or from the defendant Masten, personally : but the said defendants, Robin-son and Van Buren, are not to be made personally liable beyond

Briggs *v.* Davis.

the value of the property re-assigned at the time of the said re-assignment, unless it shall appear from the report that they have wasted or misapplied the trust property and effects, and then only to the extent of such waste or misapplication, in addition to the property re-assigned." All "other questions and directions" were reserved until the coming in and confirmation of the report.

Masten died pending the reference, and the action was revived against his administrator, Peter Masten.

The referee reported that there was owing to the complainants, on account of the debts, the payment of which was provided for by the assignment, the sum of $4,779.17, for which amount he reported that the defendants, Robinson and Van Buren, were secondarily liable according to the terms of the decretal order, and that they had admitted by stipulation that the assigned property embraced in the re-assignment was sufficient to pay that amount. The report set forth the description of three several pieces of land, the first being the parcel mortgaged by Masten to the Trust Company, which mortgage was set forth under the direction to report as to incumbrances. It also stated a judgment against Masten, in favor of one Youngs, docketed in November, 1839, and a sale in January, 1841, by virtue of an execution on this judgment, of the three pieces of land above mentioned, to Youngs, who it states assigned the certificate, in consideration of $20, to A. B. Masten, who received the sheriff's deed and conveyed the premises to Peter Masten in August, 1846. The report also stated that C. Masten continued in possession of the first mentioned of the three parcels of land from the time of the assignment until his death.

The case was heard, upon the report and the equities reserved, at a special term of the Supreme Court in Equity in Yates county, on the 23d of April, 1852. The decree made upon that occasion, after the proper recitals, and a statement that it had been shown by proof in open court that Cornelius Masten died insolvent, declared that the sum reported due to the complainants was a lien upon the three parcels of land, and

was entitled to a preference and priority by virtue of the assign-ment of Masten, and said premises were adjudged to be prima-rily liable for said sum, with interest; and that said premises, or so much thereof as should be necessary to raise the amount, should be sold at auction by the referee upon the same notice which is required by law in the case of a sale on foreclosure of a mortgage, the piece mortgaged to the Trust Company to be first sold; that the referee execute conveyances, and out of the proceeds pay the expenses, the complainants' costs of suit and the sum reported due the complainants, with interest. The decree then declared the release from Robinson and Van Buren to C. Masten to be void as between the complainants and Mas-ten and Robinson and Van Buren; and it also declared that Robinson and Van Buren and the defendant, Peter Masten, the administrator, and all persons claiming or to claim the premises under any of them, should be forever barred from all claim to the premises which might be sold under the decree, and that the purchaser should be let into possession. If the amount raised upon the sale should be insufficient to pay the sum reported, it was to be stated in the report, and Robinson and Van Buren were decreed to pay the balance, and an exe-cution was directed to issue against them.

The referee sold the premises first mentioned, being the lot mortgaged to the Trust Company, to Briggs, the plaintiff in the present action, in June, 1852, for the sum of $100, being the highest sum bid, and the plaintiff proved (under the de-fendant's objection and exception) that his wife was a daughter of Dorman, and that the said purchase was made for the bene-fit of Dorman's heirs and next of kin under a parol agreement to that effect. It appeared that the title to the bond and mort-gage in question was vested in Palmer as special receiver, &c. The premises in controversy were in the village of Penn Yan. Dorman in his lifetime lived about two miles from that village. Robinson lived about five miles off until 1838, when he moved into the village. Van Buren lived in Penn Yan till 1836, when he removed to Buffalo, and he returned to Penn Yan in

1840. Mr. Prosser, one of Dorman's administrators, lived in Penn Yan.

The judge signed a statement of facts, embracing the substance of the foregoing matters, and stated as his conclusions of law, that the re-assignment was void as against the representatives of Dorman, and that the plaintiff, as the purchaser at the referee's sale, was entitled to hold the premises discharged of the mortgage to the Trust Company. Judgment was entered accordingly; the defendant being ordered to execute a release of the mortgage. The defendant's counsel excepted. The judgment was affirmed at a general term, in the seventh district, and the defendant appealed to this court.

*B. W. Bonney*, for the appellant.

*David B. Prosser*, for the respondent.

DENIO, J. It was a rule in courts of equity, before the revision of the statutes, that the interest of the beneficiary in a trust in lands, could not be affected by any act of the trustee in favor of a party having notice of the trust; and by our recording acts, every purchaser and incumbrancer is chargeable with notice of all conveyances made by parties under whom he derived title, which have been recorded according to the statute. (*Shepherd* v. *McEvers*, 4 *John. Ch.*, 136; *Beekman* v. *Frost*, 18 *John.*, 544.) This rule, so far as it applies to the present case, is now matter of positive law, the statute respecting trusts having declared that "where the trust shall be expressed in the instrument creating the estate, every sale, conveyance or other act of the trustees in contravention of the trust shall be absolutely void." (1 *R. S.*, 730, § 65.) It is unnecessary now to inquire whether, notwithstanding the strong language of the act, such a sale would not be supported between the parties to it and their privies in estate, if the beneficiaries of the trust should not assert their rights; for the plaintiff here claims to hold under the creditors, who were the parties interested in this trust. If he is right as to the effect of the

legal proceedings which resulted in the sale to him, he is in the most favorable position which he could occupy to avail himself of the protection afforded by the statute.

This view was answered by the counsel for the defendant attempting to maintain that the re-conveyance of the surviving trustee to Masten was, in some proper sense, an act in the execution of the trust and not one subverting and destroying it. When a trust of lands is fully executed, the legal estate of the trustee is at an end. ( 1 *R. S.,* 730, § 67.) Where this is the case, there is strictly no necessity of a re-conveyance, for the estate of the trustees ceases by operation of law. It is doubtless a convenient practice, when the purposes of a trust have been consummated, that the party to whom the estate in that event belongs should have written evidence of the fact under the hands of the trustees. But their deed operates rather as the·declaration of a fact peculiarly within their knowledge, and as to which their statement would generally be received, than as an authentic legal act or the conveyance of an estate. If when, in a trust of this character, the debts are paid, the estate of the trustees ceases, there is nothing whatever for them to convey. But if this were otherwise, and if it were one of the operative trusts in this assignment, to re-convey the residue of the estate to Masten or his heirs, after they should have sold enough to pay the debts, a re-conveyance leaving the debts unpaid would be an act in contravention of the trust. A party about to take a title under such a re-conveyance, with a knowledge of the terms of the trust, would know that it was an essential pre-requisite to the validity of the deed, that the trusts should have been actually performed. There is no principle which substitutes the declaration of the trustees, however solemnly made, in place of the fact which could alone authorize them to re-convey. The purchaser, if he would be safe, must not content himself with the recital that the trusts have ceased, but must ascertain at his peril whether such is the case. (*Swarthout* v. *Curtis,* 1 *Seld.,* 301.) The statute avoids all deeds which are in truth in contravention of the trust, and there is no exception in favor of such as are fraudulently made to appear in consonance with it by means

of untrue statements inserted in them. We have been referred to the statutory provision declaring that the title taken under a trustee authorized to sell, is not to be impeached on account of the misapplication of the money paid for such title by the trustees. (1 *R. S.*, 730, § 66.) The conveyances here upheld are such as are made in fact and in form in pursuance of the trust, and where the only fault is the subsequent misconduct of the trustees in embezzling or misapplying the money; and I conceive that the enactment has no application to a case like the present.

The defendant founds himself upon a familiar doctrine of equity, that a *bona fide* purchaser for a valuable consideration, who acquires the legal title, shall be protected against a prior equity of which he had no notice. Where the parties have an equal equity, the one who holds the legal title is considered as having the better right. This is a principle of great practical importance in England; and it obtains equally here though its application is less frequent, on account of the abolition of formal trusts, and our practice of recording conveyances and incumbrances, whether they accompany the legal title, or are what the common law would regard as equitable interests, and of the constructive notice which, by the statute, the record of such conveyances afford. There is a remarkable case reported in 3 *Mylne & Keene*, 581 (*Jones* v. *Powles*), which illustrates the rule, and shows to what extent it is carried. John Jones, the owner of a freehold estate, borrowed money upon it and executed a mortgage, but before anything else occurred, he paid it off; but the mortgagee did not execute a re-conveyance. With us the title conveyed by the mortgage would be extinguished at law as well as in equity. But there, as is well known, it is otherwise. John Jones died, and one Meredith produced a will by which, if genuine, Jones devised to him all his real and personal estate. Meredith went into possession, and borrowed money of Hall and procured the mortgagee of the satisfied mortgage to join with him in the mortgage deed, which, however, recited the fact of the satisfaction of that mortgage. The defendant derived her title from Hall. She had made fur-

ther advances, and had taken a conveyance of the estate. It was afterwards discovered that the will was a forgery, and the heir at law of John Jones filed a bill to redeem if anything was due, and for relief, as heir, on the ground of the falsity of the will. Thus it will be seen that the defendant's claim upon the legal estate, was through the holder of the satisfied mortgage, of the payment of which she had notice by the recitals in the deeds under which she claimed, and that all her equity was derived from parties holding under the forged will; and yet it was decided, that having the formal legal estate, and an equity equal to that of the heir at law, she was entitled to prevail against the latter as to all her advances made before she had notice that the genuineness of the will was contested. The opinion of the Master of the Rolls may be thought to favor the position of the defendant in the present case. He said: " My impression at the opening of the case was that the protection of the legal estate extended only to cases where the title of the purchaser for valuable consideration, without notice, was impeached by some secret act or matter done by the vendor or those under whom he claimed; but upon full consideration of all the authorities which have been referred to, and the *dicta* of judges and text writers, and the principles upon which the rule is grounded, I am of opinion that the protection of the legal estate is to be extended, not merely to cases in which the title of the purchaser for valuable consideration, without notice, is impeached by reason of a secret act done, but also to cases where it is impeached by reason of the falsehood of a fact of title asserted by the vendor or those under whom he claims, *where such asserted title is clothed with possession, and the falsehood of the fact asserted could not have been detected by reasonable diligence.*"

I distinguish the principle of that case, which carries the doctrine to the greatest length to which it was ever extended, from the present, by holding that the legal title vested in the trustees did not pass by the conveyance to Masten; and I think it did not pass, because they could not legally make an operative conveyance, except in the execution of the trust, and the deed

to Masten was not in the execution of the trust, but in disaffirm-ance of it. It was in hostility to it, and if operative it sub-verted and put an end to it, though its objects were not accomplished. It was precisely such a conveyance as the statute referred to by the terms *conveyances in contravention of the trust.* The mandate of the statute that such conveyances shall be absolutely void, forbids us to hold that they shall pass the legal estate which was vested in the trustees, for the purpose of tacking equitable interests to it, or for any other purpose. I repeat, therefore, that this re-conveyance, upon the facts which were established on the trial, was inoperative as against the creditors of Masten, and that they were, notwithstanding, en-titled to have the land embraced in it subjected to sale for the payment of their debts.

The remaining inquiry relates to the effect of the action in the Court of Chancery, and of the final judgment in that action in the Supreme Court in Equity. I have examined these pro-ceedings with a disposition to find some means by which the mortgage to the Trust Company could be sustained, being con-vinced that it was taken in good faith and without the neglect of any ordinary precautions, while Mr. Dorman was not wholly without fault in omitting to bring the premises to a sale, and to settle up the trust in his lifetime. The consequence of not mak-ing the Trust Company a party to that action is, that it was not concluded as to any matters which were there adjudged. The receiver was at liberty, therefore, to show in the present suit that the recital in the deed of re-conveyance was true, and that the title to the premises had actually re-vested in Masten by the execution of the trust. This, however, was not proved by the defendant, but, on the contrary, the plaintiff showed affirma-tively, that a large amount of indebtedness, protected by the second class of the assignment, remained unpaid to the repre-sentatives of Dorman, when the surviving trustees executed the re-assignment. The proof established the position that the re-assignment was a void paper. When, therefore, Dorman's administrators filed their bill to enforce the trust, they were under no legal necessity to make the Trust Company or its

representative a defendant. It would have been convenient to do so, as all questions might in that way have been determined in one suit. But if the administrators were content to rely upon their ability, at any time, to show the facts rendering the re-assignment inoperative whenever it should be set up, and to convince bidders that it would form no impediment to the title, they were at liberty to compel a sale in execution of the trust without taking any notice of the claim of the Trust Company under its mortgage. This is what, in effect, they did do. Their bill stated the facts necessary to show that the property assigned to the trustees was still liable for the payment of their debt, though the surviving trustees had violated their duty in attempting to convey it to Masten; and although the specific prayer was that Robinson and Van Buren, the surviving trustees, should be adjudged liable to pay them, there was also a prayer for general relief, and the scope of the bill was adapted to a decree which should require the property to be sold for the purposes of the trust. The decree of the Chancellor seems to have contemplated an arrangement of the liabilities of the defendants in the action, and of the lands in question, which, if carried out in the final decree, might have produced the satisfaction of the debt without touching the interests which Masten had conveyed to the Trust Company. According to its provisions, Masten was first to be resorted to. If an execution against him did not raise the amount, then the real estate in his hands, unsold, was to be subjected; and lastly, if satisfaction was not obtained, there was to be a personal judgment against Robinson and Van Buren on account of their breach of trust. The decree was not final, but a reference was ordered to ascertain certain facts, and the case was to be again set down upon the report and upon the equity reserved. This was done at a special term of the Supreme Court in Equity, upon which occasion additional proof was taken showing that the personal remedy against Masten was worthless on account of his insolvency. The report also established that the real estate re-assigned had been incumbered by mortgages and judgments to a large amount, if Masten was capable of incumbering it. The special

term, in its decree, departed from the course which the Chancellor had indicated. It declared the complainants' debt to be a lien upon the lands embraced in the terms of the re-conveyance, and that that instrument was void between the plaintiffs and the defendants, and it directed a sale of these lands in satisfaction of the lien in the manner in which sales are made upon the foreclosure of a mortgage, and it prescribed the order in which the sale should take place, and provided for a personal judgment against Robinson and Van Buren for any deficiency which might remain unsatisfied of the plaintiff's debt. The effect of this decree as to the land was to carry out and execute the trusts of the assignment, and the purchaser under it took a title of the same nature which he would have gotten if the trustees had themselves sold him the property in the course of administering the trusts. He holds his title under the assignment. Inasmuch, however, as the Trust Company was not at all concluded by the decree, and might still, if it were able, controvert the facts upon which the invalidity of the conveyance was pronounced, the purchaser brought this action to have that question determined, and to remove the cloud upon his title. Had the defendant been able to show that the purposes of the assignment had been accomplished, so that the title had re-vested in Masten before the execution of the mortgage, the decree of the Supreme Court would not have stood in his way; but as the fact was found to be otherwise, the law considers him a stranger to the subject of the controversy, and he has no right to object to the disposition which the decree made re specting the land. All the parties interested in it were before the court, and of course concluded by what was done.

According to the practice of the Court of Chancery, it may be doubted whether it was regular to change the effect of decretal order of the Chancellor upon the hearing upon the equity referred. The regular course was to petition for a rehearing. But if an error in this respect was committed, it does not affect the validity of the judgment. The parties to the suit chose to waive the irregularity, if one was committed, and a party against whom it is given in evidence in another suit

cannot impeach it collaterally.   Unless it is void for want of jurisdiction, or some other cause, it can only be questioned in a proceeding for a review.

But the defendant is entitled to redeem.   The mortgage to the Trust Company was not void.   By sections 61 and 62 of the article of the Revised Statutes respecting uses and trusts (1 *R. S.*, 729), Masten had such an interest in the premises, irrespective of the re-conveyance by the trustees, that he could grant or devise them.   Indeed, it is declared that he has a legal estate in them against all persons except the trustees and those claiming under them.   But the plaintiff, as the purchaser under the judgment of the Supreme Court, is clothed with the rights of Dorman's representatives, and the defendant must, therefore, in order to redeem, pay the amount of that debt, with interest. (*Vroom* v. *Ditmas*, 4 *Paige*, 526.)   But the defendant should not be compelled to pay the costs of the suit commenced in the Court of Chancery.   The mortgage to the Trust Company was on record, and that corporation, or the persons representing it, might have been made parties.   The judgment of the Supreme Court, which requires the mortgage to be satisfied, must be reversed, without costs in this court, and the record must be remitted to enable that court to proceed as in an action for a foreclosure, if the defendant shall not elect to redeem the premises.   The judgment of this court to be settled by one of the judges.

JOHNSON, Ch. J., ALLEN, GRAY and GROVER, Js., concurred.

COMSTOCK, J. (Dissenting.)   The omission of the county clerk to state in his certificate of search the assignment of Masten to trustees for creditors, and their re-conveyance to him, does not strengthen the claim of the mortgage given to the North American Trust and Banking Company to be considered a *bona fide* mortgage.   The constructive notice furnished by the actual recording of those instruments does not at all depend upon the manner in which the clerk discharged his duty, when he was employed to make searches and furnish

the proper abstracts. His certificate of a recorded instrument of course conveys actual notice to the party to whom it is delivered; but without any such certificate, or even with a false certificate, the record itself is in judgment of law notice, and equal in its result to actual knowledge.

There can be no doubt, however, that the North American Trust and Banking Company was a *bona fide* mortgagee for any purpose material to the present case. We must impute to that company knowledge of the assignment in trust, and of the re-conveyance to Masten. But there was nothing on the face of these deeds to impeach the title of Masten at the time he gave the mortgage. The re-conveyance by the surviving assignees declared explicitly that all the trusts had been executed. That fact being true, it was their duty thus to re-convey, and the re-conveyance would re-vest a good title in the author of the trust. If these instruments, therefore, had been brought under the actual inspection of the Trust and Banking Company, the facts communicated thereby would have had no tendency to impeach the good faith of the mortgage. The re-conveyance being in its nature one authorized by the trust, the company was not bound to know whether it was an abuse of the trust. They were not put on inquiry to ascertain whether all of the express trusts contained in the assignment had been in fact satisfied. They had a right to rely upon the fact as stated in the re-conveyance, supported as it was by the presumption, after a lapse of about four and a half years, that the trustees had performed their duty under the assign-ment. (*Jones* v. *Smith*, 1 *Hare*, 43.)

Within the general principles of equity, therefore, the rights of the North American Trust and Banking Company would be superior to the claim of a creditor provided for in the assignment, to be paid out of the real estate in question. Such a claim rests upon a mere equity, while the mortgage of the company is upon the legal title, and, as we have seen, it was taken in good faith. This view would be decisive of the case, but for the statute (1 *R. S.*, 730, § 65) which declares that "when the trust shall be expressed in the instrument creating the

estate, every sale, conveyance or other act of the trustees in contravention of the trust shall be absolutely void." The re-conveyance in question, upon the facts found, was clearly an abuse of the trust, because the creditor who complained of it had not been paid his debt, as provided for in the assign- ment; and as between him and all parties to the re-conveyance, his debt remained a charge upon the trust fund. This charge has been enforced against the land in question, by a sale under' a decree pronounced in a suit instituted by the creditor against those parties only. That decree and the sale under it undoubt- edly vested the title in the respondent, who was the purchaser; and if the re-conveyance to Masten was absolutely void under the statute, then it may be that the mortgage should be can- celed as a cloud upon the title.

But I am of opinion that the re-conveyance was not "in contravention of the trust" within the meaning of the statute. In a certain loose and general sense, every act of a trustee done in bad faith or in abuse of his trust is in contravention of it. Thus, if a trustee, for creditors in the execution of his acknow- ledged powers, should sell the estate at a very improper sacrifice of value, the act would in one sense contravene the trust, and parties injured by the transaction would have a right to complain, and even to annul the sale upon facts implicating the purchaser in the abuse. Nevertheless the act in its nature would be entirely consistent with the trust, although a viola- tion of it in the attending circumstances; and there is no doubt that a good derivative title could be acquired by a party purchasing for value, and having no notice of the abuse. So in this case. The re-conveyance to Masten was an act, as we have seen, in its own nature precisely in accordance with the duty of the trustees. The express trusts in favor of the creditors and the resulting trust in favor of the assignor were entirely harmonious. The re-conveyance simply executed that resulting trust. Looking at extrinsic facts, we know that the trustees violated their duty, because the express trusts were not satisfied. But there was no necessary conflict between those trusts and the re-conveyance.

The language of the statute does not require the interpreta-
tion insisted on by the respondent, and that interpretation is
plainly opposed to its policy as well as to the general maxims
of equity. What are the acts which "contravene" an express
trust declared in the instrument creating the estate? They
are such as on a comparison with the trust necessarily and in
all circumstances stand opposed to or in conflict with it: in
other words, such as transcend the powers vested in the trustee,
and not such as are within his powers, although a violation of
his duty. Thus, under the statute of trusts (1 *R. S.,* 729, § 55),
an express trust may be created to receive the rents and profits
of lands, and apply them to the use of any person, or to
receive and accumulate them, or to mortgage or lease lands for
the benefit of legatees, &c. In such cases the trustee takes no
power to sell, and his conveyance would be in contravention
of the trust, and therefore void. The intention was to render
trusts, for any purpose except sale, inalienable, and that inten-
tion was accomplished by the section (65) which declares the
sale or conveyance void. At the common law such estates
were alienable, although the purchaser might take the estate
still charged with the trust. But when the trust is to sell for
the benefit of creditors, the trustee may grossly violate his
duty without transcending his powers. In such a case the
purchaser, whether immediate or remote, ought to be protected
if he acts in good faith. The trust being one for sale, it is
impossible that an actual sale can "contravene" the trust.
After all the creditors are satisfied, the estate is held in trust
for the debtor who assigned it, and the duty to re-convey is
plain. It may be that the estate re-vests without a re-conveyance,
but that is not material. A re-conveyance is the proper evi-
dence that the trusts are satisfied, and the right of the debtor
to demand one is unquestionable. Now it is quite easy to
suppose that the trustees re-convey in entire good faith, having
paid all the debts which have come to their knowledge. If
an unpaid debt, however small, is afterwards discovered, or if a
controverted one be established, then, on the construction con-
tended for, the re-conveyance is absolutely void. Good faith

or bad faith is certainly not material.   The question is purely one of power to act.   I am satisfied that such is not the intention of the statute.   A conveyance or other act of the trustee, which as such, and judged by its own nature, is consistent with the trust, or perhaps even strictly pursues it, and when the alleged violation rests in parol facts, does not contravene the trust; and the conveyance, therefore, or other act, is not necessarily and absolutely void.

The judgment should be reversed, and a new trial granted.

S. B. STRONG, J., also dissented; SELDEN, J., took no part in the case.

Judgment modified.