LEAH ROSENBURG, AS ADMINISTRATRIX, ETC., OF HENRY ROSENBURG, DECEASED, APPELLANT, *v.* ABRAM ROSENBURG AND PAULINE BEIR, RESPONDENTS.

*Assignment of property — when not valid as a gift* inter vivos *— when valid as a trust—what testimony, as to advice given by a counsel to one of the parties, is not inadmissible as a confidential communication — Code of Civil Procedure, sec.* 835.

On February 8, 1883, one Henry Rosenburg, by instruments in writing duly sealed and acknowledged, reciting a consideration of one dollar and other good and valuable consideration, lawful money of the United States, the receipt of which was acknowledged, transferred to his son Abram all his personal property; at the same time the son executed and delivered to his father written instruments, duly sealed and acknowledged, by which he acknowledged the receipt of the property, and that as part of the consideration it was to be in, all respects retransferred to the said Henry, if at any time he should so desire, without charge or expense to or against him, and also that the said Abram was,

as a part of the consideration, to see that the said Henry was supplied with ample means for his support and maintenance, and for travel and otherwise as he might desire, and in case he did not desire a retransfer of said property, then at his death, or within eighteen months thereafter, the said Abram was to pay certain specified sums of money to the persons and institutions therein named. Abram took possession of the property at the time of the transfer and still retains it.

Upon the trial of this action brought after the death of Henry, which occurred in April, 1884, by the plaintiff, the widow and sole administratrix of Henry, to recover the property so transferred as belonging to his estate, the court held that the assignment vested in Abram the title to all the personal property, except as against the creditors of Henry, and that Abram should pay to the plaintiff, as administratrix, a sum sufficient to pay the debts and the costs and expenses of administration.

*Held*, that the judgment should be affirmed.

That the transfer, though not valid as a gift *inter vivos*, by reason of the clause allowing the donor to revoke the gift at any time, was valid as a trust, and the property transferred was to be held by Abram in trust for the donor and, in case he died without revoking it, for the persons therein named. (BARKER, J.)

It seems that any property remaining after the persons named in the instrument had received the amount therein given to them, was intended by the donor to belong to Abram. (BARKER, J.)

Before the papers were prepared the deceased consulted with a lawyer, Mr. Davidson, and after the assignment was prepared, and before it was executed, Abram visited his office and the counterpart was there prepared and executed in the presence of both parties, the instrument being prepared by, acknowledged before, and delivered in the presence of, Davidson. Upon the trial Davidson was allowed to relate what occurred in the presence of both parties as to the delivery of the instrument.

*Held*, that this testimony did not relate to a confidential communication within the meaning of section 835 of the Code of Civil Procedure.

APPEAL by the plaintiff from an interlocutory judgment, entered upon the decision of the Monroe Special Term.

Henry Rosenburg died in April, 1884, intestate, leaving him surviving the plaintiff, his widow and the defendants, his children by a former wife. In February, 1883, the deceased and his brother David were copartners in business, as jewelers, at Rochester. At that time his personal property was valued at $100,000, and consisted of his one-half interest in the copartnership business, notes, bonds and mortgages, and stocks in business corporations. He was also the owner of a house and lot, and at the time of his death he held policies of insurance on his life which were payable to his said children. In 1879 he intermarried with the plaintiff, she at that

time being in the possession of property in her own right of considerable value. The plaintiff is the sole administratrix of his estate. On the 8th day of February, 1883, the deceased, by instruments in writing, transferred to his son Abram all his personal property; these instruments were duly acknowledged and delivered, the formal words of transfer and conveyance were substantially alike, and as follows:

" Know all men by these presents that I, Henry Rosenburg, of the city of Rochester, Monroe county, State of New York, of the first part, for and in consideration of one dollar and other good and value consideration, lawful money of the United States, to me in hand paid, at and before the ensealing and delivering of these presents, by my son, Abram Rosenburg, of the same city, of the second part, the receipt whereof is hereby acknowledged, has bargained and sold, and by these presents does grant and convey unto the said party of the second part, his executors, administrators and assigns, all the right and interest of the party of the first part in and to (here giving a description of the personal property and choses in action) * * * to have and hold the same unto the said party of the second part, his executors, administrators and assigns forever. And I do covenant to and with the said party of the second part, that I am the owner and have the right to sell and transfer the said property."

At the same time, and as a part of the same transaction, the defendant Abram Rosenburg executed and delivered to his father an instrument in writing, under seal, duly acknowledged and which was also then delivered, the terms of which are as follows: " This is to certify that 1 have this day and concurrent herewith received from my father, Henry Rosenburg, of the city of Rochester, N. Y., an assignment and transfer of certain mortgages, with the bonds accompanying, of about the value and mentioned as follows (here follows a description of the bonds): And have and at the same time do receive an assignment and transfer in writing, made by the said Henry Rosenburg to me of even date herewith, of all his interest in and to the store (here follows a description of the copartnership property, and also a list of the notes and accounts), * * * amounting in all to about the sum of $40,000 outside of the store, and the store and the store interest of the said Henry to

about the sum of $40,000. All of which several interests and claims so transferred to me are accepted by me as part consideration of the transfer, to be in all respects retransferred to said Henry Rosenburg, if at any time he shall desire, without charge or expense to or against him; also, as part consideration of the transfer, I am at all times to see that the said Henry Rosenburg is supplied with ample means for his support and maintenance, and for travel and otherwise as he may desire, from said transfers. And in case he does not desire a retransfer of said matters, things, claims and demands so transferred to me, then at his death, or within eighteen months thereafter, I am, as part consideration of said transfers, to pay the following sums of money, and to the persons and institutions named, as follows, viz.: To my daughter Pauline, wife of Isaac Beir, $20,000; to her son, Isaac R. Beir, the sum of $1,000." The instrument then makes provision for like payments of different sums of money varying from $1,000 to $200 to other relatives and friends, and some minor requests to religious, benevolent and educational institutions. On the same day, by deed, the deceased conveyed to his daughter, the defendant Pauline Beir, his house and lot.

The plaintiff claims that the testator died the lawful owner of all the personal property mentioned in the aforesaid instruments, and she brings this action to reach the same, or their avails, that they may be administered by her as the personal estate of the deceased and used in the payment of his debts, and the balance to be distributed among his next of kin, as provided by statute in cases of intestacy.

The trial court held, as a matter of law, that the assignment from the deceased to Abraham Rosenburg vested in the latter the title to all the personal property described therein; that at the time of his death the deceased was indebted to various persons, the exact amount of which did not appear, and that as against such persons the assignment was fraudulent and the same was declared void as against the creditors, and that the defendant Abram Rosenburg pay over to the plaintiff, as the administratrix of the deceased, whatever sum was necessary to pay the debts and the costs and expenses of administration, and it was referred to a referee to ascertain these sums. As to all other parties, the assignment was upheld as valid and effectual, and in that connection the court found, as a further

fact, that the assignment and transfer was not in fraud of the rights of the plaintiff as the widow of the intestate.

*S. D. Bentley*, for the appellant.

*J. A. Stull* and *Louis Marshall*, for the respondents.

BARKER, J. :

The plaintiff, in her representative capacity, contends that the defendant Abram Rosenburg did not acquire any title to the personal property and choses in action under the said instruments of assignment, or by force of the arrangement and transactions between himself and his father. Simultaneously with the execution and delivery of the assignment the deceased made an actual delivery of the personal property and the choses in action to his son, the assignee, who immediately thereafter formed a copartnership with David Rosenburg, a former partner of the deceased, the stock of goods remaining in the business carried on by the new firm.

The trial court found as a fact, and the evidence supports the conclusion, that there was no other consideration for the transfer than as the same is mentioned and expressed in the counterpart to the assignments executed by the defendant, the transferee. This fact found in this form is equivalent to, and is in effect, a finding that the assignment was not based upon any pecuniary consideration, and that the only consideration therefor was the executory promises of the assignee set forth in the instrument executed on his part. This view as to the effect and meaning of the finding on the question of consideration was conceded by the respective counsel for the parties on the argument.

With this understanding as to the effect and meaning of the finding on that question, and all the other facts being substantially undisputed, the legal question is presented, did the absolute title to the property pass from the assignor to the assignee ?

The defendant defends his claim of title upon the ground that the transaction constituted a valid executed gift. All the property embraced in the assignment was the subject of a gift *inter vivos*, and the only inquiry is as to the legal effect of the arrangement between the parties. As a general rule, any person competent to transact business may give whatever he or she may own to any

other person without receiving any pecuniary consideration therefor. A voluntary transfer of property, without any consideration whatever being paid therefor, is legally valid if fully executed, and nothing remains to be done to complete the donee's title. To constitute a gift *inter vivos*, it requires a full and unqualified renunciation of title by the donor, and the acquisition by the donee of an absolute title, accompanied by an actual delivery of the subject-matter of the gift. The donor must surrender all his title and interests, without making any conditions by means of which he may resume the possession and enjoy his former estate in the property. This, as a legal proposition, is well settled. (*Curry* v. *Powers*, 70 N. Y., 217; *Irish* v. *Nutting*, 47 Barb., 383; *Jackson* v. *Twenty-third Street Ry. Co.*, 88 N. Y., 526; *Warriner* v. *Rogers*, 16 Eq., 340; S. C., reported in 6 Moak's Eng. R., 781; *Young* v. *Young*, 80 N. Y., 423.)

Any gift of chattels which expressly reserves the use of the property to the donor for a certain period, or as long as the donor should live, is ineffectual. (2 Schouler on Personal Prop., 118; *Vass* v. *Hicks*, 3 Murphy [N. C.], 494.) This rule has been applied where the gift is made by a written instrument or deed purporting to transfer the title, but containing the reservation. (*Sutton's Exr.* v. *Hollowell*, 2 Dev., 185; *Lance* v. *Lance*, 5 Jones L. Rep., 413.)

Whether the donor intended to vest in the donee an absolute and unqualified title, renouncing all dominion over the same on his part, is, in this case, to be determined by the writings which are to be read together as constituting one instrument. They were executed at the same time, and between the same parties, and relate to the same subject-matter. (*Rogers* v. *Smith*, 47 N. Y., 324; *Knowles* v. *Toone*, 96 id., 534.)

In the paper executed by the donee it is expressly declared that the donor may, at any time during his lifetime, resume the possession of the property and enjoy his former title therein without paying to the donee any consideration therefor or assigning any reason for his action cancelling the agreement. This provision of the agreement is in the nature of a condition imposed on the title transferred to the donee, and applies to the identical property which was the subject of the gift, for the defendant's promise is not simply to account to the donor for the proceeds or to pay to him

fixed sum of money in consideration of the transfer of an absolute title to the property. If it had been the intention of the donor to make a perfect gift of the property to the donee, and vest in him an absolute title, such intention has been defeated by the terms of the agreement, which must be observed in determining the legal rights of the parties. As the transfer was made without consideration, it is a mere *nudum pactum*, courts of equity never interfere to perfect a defective gift or voluntary settlement made without consideration. If a valid gift is made it will be upheld both at law and in equity, but it must stand as made or not at all. (*Young* v. *Young*, *supra*.)

It was unnecessary for the purpose of vesting an absolute title to the property in the donee, that the same should be transferred in writing, for such an intention on the part of the donor could have been carried out by delivery of the same to the donee, accompanied with an oral declaration that the same was intended as a gift. (*Gilman* v. *McArdle*, 99 N. Y., 452.)

The gift is not made effective simply because the terms of the gift are reduced to writing. The principles of law applicable to the case are the same as if a transfer had been orally made, accompanied by an actual delivery. Suppose the donor had delivered to the donee some one of the bonds, accompanied by the declaration: "I give you this security, but you shall support and maintain me during my lifetime, and if, at any time before my death, I desire to renounce this gift, you shall deliver the same to me." It would not amount to a transfer of the title *in presenti*.

If no other view can be taken of the transaction than as an attempt to make a gift *inter vivos*, then as to the property transferred, or the avails of the same unused by the donee in support and maintenance of the donor, the plaintiff would be entitled to the property in her representative capacity for the purposes of administration. We do not concur in the argument made in behalf of the plaintiff, that the writing was testamentary in its character and void for that reason. But we are of the opinion that a valid trust was created and that the title to the property was vested in the assignee, in trust for the use and purposes therein set forth, and as the deceased in his lifetime did not terminate the trust, the same was in force at his death, and the trustee may be required by any of the interested parties to carry the same into effect. In terms the title

of the property was transferred to Abram, and the instrument executed by him is a declaration of the trust, specifying the use. The essential requisites of a valid trust are : First. A sufficient expression of an intention to create a trust. Second. A beneficiary who is named or capable of being ascertained.

A power reserved in the creator of a trust to revoke the same during his lifetime, does not destroy its validity, nor prevent its being carried into effect after his death, if he fails to revoke the same during his lifetime. Here the deceased provided for his own support and maintenance during his lifetime out of the proceeds of the property transferred to his son, and in case the transfer was not revoked during his lifetime, then certain persons and charitable institutions, all of whom are designated, were to receive specific portions of the trust fund. The validity of trusts of this character are recognized in *Gilman* v. *McArdle* (*supra*). In that case one Gilman, in his lifetime, placed in the custody of McArdle a sum of money, and directed him to use the same for the support and maintenance of herself and her husband as long as they should live, and after the death of the survivor of them, to use the residue of said money to pay their respective funeral expenses and pay for the erecting of a suitable monument to their memories, and to spend the amount remaining in his hands after such payments for Roman Catholic masses, to be procured by him to be said for the repose of the souls of herself and husband, and McArdle, on receiving the money, promised to apply the same to such uses and purposes. Though not in writing, it was held to be a valid trust for all the uses and purposes mentioned, excepting the procuring of masses to be said. As to the validity of that portion of the trust no opinion was expressed by the court. The right of revocation was not reserved in that case, as it was by the creator of the trust in the case now before us. But reserving the right of revocation does not destroy the validity of the trust if it is in other respects valid.

In *Stone* v. *Hackett* (12 Gray., 227), it was held that a trust to pay the income to the settler during his lifetime, and at his death to transfer the shares to certain charitable objects was valid, and vested the title to the shares in the trustee, as against the widow of the settler and his personal representatives, notwithstanding that a power was reserved to the settler to modify the uses or to revoke

the trust.    The court there remarked " that it is now well established and universally acted on by Courts of Chancery, that a voluntary gift or conveyance of property in trust, when fully completed and executed, will be regarded as valid, and its provisions will be enforced and carried into effect against all persons except creditors or *bona fide* purchasers without notice.    It is certainly true that a court of equity will lend no assistance towards perfecting a voluntary contract or agreement for the creation of a trust, nor regard it as binding so long as it remains executory, but it is equally true that if such an agreement or contract be executed by a conveyance of property in trust, so that nothing remains to be done by the grantor or donor to complete the transfer or title, the relation of trustee and *cestui que trust* is deemed to be established, and the equitable rights and interests arising out of the conveyance, though made without consideration, will be enforced in chancery."    The English cases are also to the same effect. (*Ellison* v. *Ellison*, 6 Vesey, 656.) In that case a decree was directed for the enforcement of a trust which, in its creation, was wholly voluntary and without consideration.    To the same effect is the more recent case of *Davis* v. *Ney* (125 Mass., 590).

It was in the power of the deceased to make this disposition of his own property in his lifetime.    The written transfers vested a title in his son for the purposes mentioned, all of which were lawful, and there is no rule of law that prevents the owner of property from making such a disposition of the same.    Trusts may be created by will or *inter vivos* with the power in the trustee to pay and a right in the *cestui que trust* to receive, not merely the income but the principal of the fund, as needed or called for.    It is true that all the funds may have been drawn for the support and maintenance of the creator of the trust, but that did not affect the legal title to the property in the hands of the trustee, and the surplus which now remains should take the course indicated by the instrument declaring the use.    The beneficiaries specifically mentioned, of course, are first to be paid.    If there is any surplus over, as it seems to be conceded there will be, the question will then be presented whether such surplus belongs to the trustee, as the intended beneficiary, or whether it reverts to and becomes a part of the estate of Mr. Rosenburg.    When a trust has been fully executed,

and the title of the trustee ceases by operation of law, no reconveyance by the trustee to the party entitled to the fund is necessary. (*Briggs* v. *Davis*, 20 N. Y., 22; 11 Pomeroy's Eq. Jur., § 1065.)

I am inclined to the opinion that it was the intention of the deceased in transferring this property to his son in trust, if he did not revoke the same in his lifetime, that he should out of his property pay the *cestui que trusts* named the sums mentioned, and that he should retain the residue as in his right as one of the intended beneficiaries. If the agreement is susceptible of such an interpretation, and fairly and unmistakably indicates such an intention, then it may prevail; otherwise it belongs to the estate of the deceased, and the plaintiff is entitled to receive the same for the purposes of administration.

Before the papers were prepared the deceased consulted with Mr. Davidson, a lawyer, and after the assignment was prepared, and before it was executed, Abram Rosenburg visited the office, and the counterpart was prepared and executed in the presence of both parties, and the instruments were acknowledged before Davidson as notary public, and the delivery of each was made in his presence. We have examined the exception taken by the plaintiff to the ruling of the court permitting Mr. Davidson, who prepared the papers and acted as counsel for the senior Mr. Rosenburg, to testify as to the delivery of the papers. All that he relates upon that subject occurred in the presence of both parties, and was limited to the subject of delivery, and did not constitute a confidential communication which would be excluded under the provisions of section 835 of the Code of Civil Procedure. Both parties selected him as the person before whom they made their respective acknowledgments, and the fact of delivery could not be completed without the action of both parties, and any person who witnessed the same could prove the delivery, and the provisions of the said section are not applicable. (*Westover* v. *Ins. Co.*, 99 N. Y., 56; *Whiting* v. *Barney*, 30 id., 330; *Sherman* v. *Scott*, 27 Hun, 331; *Hebbard* v. *Haughian*, 70 N. Y., 54; *Coveney* v. *Tannahill*, 1 Hill, 33.)

The judgment should be affirmed, with costs.

HAIGHT and BRADLEY, JJ., concurred in result; SMITH, P. J. not voting.

Motion for new trial denied, with costs.