[No. 6,570.—Department One.]
JOHN G. AYRES *v.* J. BRUCE PALMER ET AL.

POWER OF ATTORNEY.—A power of attorney gave the power to sell and convey or to mortgage land; the land being incumbered, the attorney, with intent to mortgage it for a sum sufficient to pay off the incumbrance and to pay off certain debts of his own, conveyed the land to J. B., upon no other consideration than to cause him to mortgage the land for said sum, which was done; and then J. B., at the request of the attorney, conveyed the land to the principal. *Held,* that the transaction was a mode of mortgaging the land within the meaning of the power, and was valid.

ID.—AFTER ACQUIRED TITLE.—At the date of the power of attorney, the title to the land was in the United States, but the principal in the power of attorney was in possession by an agent, and had the privilege, under the Act of March 3rd, 1865, to purchase from the Government at $1.25 per acre, and had filed his application therefor; afterwards, and prior to the date of said deed to J. B., a patent for the land issued to said principal. *Held,* that the title thus acquired passed to J. B. and to the mortgagee.

APPEAL from a judgment for the plaintiff, and an order denying a new trial, in the Third District Court, County of Alameda. McKEE, J.

After the decision, the appellants filed their petition that the appeal be reheard in Bank, and the application was denied.

*A. M. Crane,* for Appellants.

The power of attorney to Edward F. Palmer from Edward Field did not authorize him, the attorney, *to give away* the land, or to convey it to J. Bruce Palmer without any consideration. By said deed, said J. Bruce Palmer took no title whatever, but the deed to him was utterly void; and the plaintiff Ayres, being privy to the want of consideration of said deed, could take no title or incumbrance under it; but knowing that his mortgage rested upon this void deed, it (the mortgage) was equally void. (*Dupont* v. *Worthman,* 10 Cal. 254; *Mott* v. *Smith,* 15 id. 533; *McNeil* v. *Shirley,* 33 id. 202; *Waldron* v. *McComb,* 1 Hill, 111.)

In any event, the power of attorney did not authorize Edward F. Palmer to convey *this* title. Admitting that Edward Field, the constituent, owned or had an interest in this land *at* the time the power was given, and that his patent, given some months after the power, was but the perfecting of his interest

or incohate title, then the power must be deemed to relate to *that* title; i. e., the equitable or legal title which he had at the date of the power in the land.

That there could be no ratification by words, or conduct, or by parol.

The original power being by *deed*, or sealed writing, the ratification must also be by deed or writing. (1 Greenl. Ev. § 66, and authorities there quoted, viz.: *Blood* v. *Goodrich*, 9 Wend. 68; *S. C.* 12 id. 525; Story on Agency, § 252; *Despatch Line, etc.* v. *Bellamy Manufacturing Co.* 12 N. H. 205; *Boyd* v. *Dobson*, Hemeph. 57; *Videau* v. *Griffin*, 21 Cal. 389; *Billings* v. *Morrow*, 7 id. 171; *Taylor* v. *Robinson*, 14 id. 396; *Bord* v. *Collins*, 30 id. 408; *Racoulett* v. *Sausevain*, 32 id. 376.)

It was a fraud to appropriate Field's property by way of mortgage to the payment of Bruce Palmer's debt to Ayres. Edward F. Palmer could not deal with or dispose of or mortgage the land, in a case where his own interest was directly opposed to his principal. (*Stagner* v. *Tyson*, 2 Hill, 279; *Stone* v. *Hays*, 3 Gerico, 575.) So far as his stock-gambling debt is concerned, plaintiff has parted with no value on account of his mortgage. He still has the same claim that he ever had against J. Bruce Palmer.

As to the payment of the Odd Fellows mortgage by plaintiff, that was no consideration, inasmuch as that mortgage was void. But even were the Odd Fellows Bank mortgage valid, yet plaintiff having included that amount in this fraudulent mortgage, the mortgage will not be allowed to stand as security therefor. (*Goodwin* v. *Hammond*, 13 Cal. 168.)

*Charles Clark*, and *John M. Burnett*, and *C. T. Botts*, for Respondent.

The power of attorney authorized the attorney, E. F. Palmer, to mortgage the land *for any purpose whatever*. This enables him to mortgage it for J. Bruce Palmer's debt, or any debt he might see fit. The whole transaction constituted a mortgage, as is shown by this suit; and should Field have had any objection as to whose debt was secured, he certainly could waive that by parol.

In this particular, counsel seems to have overlooked the distinction between acts done *without* any original authority and acts done irregularly under a general authority.

*Delos Lake*, also for Appellants, on petition for rehearing in Bank.

A power of attorney is not an authority to act in the business of any one else, or for or on behalf of any one else. The law never extends the language of a power of attorney beyond the business or property of the principal. In fact, it is beyond the nature of a power of attorney to enter into or intermeddle with the affairs of strangers, or of any person other than the principal. Any other or different construction would require the most clear and unmistakable terms. A power of attorney must, as between the principal and the grantees or mortgagees of the attorney, be construed strictly in favor of the principal—certainly as against all persons claiming under the power of attorney, who have notice of the consideration, circumstances, or conditions accompanying the execution of the power by the attorney. (*North River Bank* v. *Aymer*, 3 Hill, 262; *Lord* v. *Sherman*, 2 Cal. 498.)

Ross, J.:

This action was brought by John G. Ayres, plaintiff, against J. Bruce Palmer, J. C. Palmer, Martha L. Palmer, and Edward Field, defendants, to foreclose a mortgage made to secure the payment of a promissory note for $23,000, with interest, etc.

J. Bruce Palmer is the son of J. C. Palmer, J. C. Palmer and Martha L. Palmer are husband and wife, and Edward Field is the father of Mrs. Palmer.

It appears from the record, that, in 1857, J. C. Palmer was the claimant of a tract of land situated in Alameda County, called the ex-Mission of San Jose; and on the 22nd of June of that year, for a nominal consideration, conveyed by deed all of his interest therein to his father-in-law, the defendant Field; that the claim of title to the land was finally rejected by the United States tribunals; but by an Act of Congress, passed March 3rd, 1865, persons in possession of any portion of the

land were permitted to purchase the same from the Government, at the rate of one dollar and a quarter per acre. The defendant Field, as a beneficiary under this act, applied to purchase a portion of the land, including the mortgaged premises. His application was granted, and on April 11th, 1868, a patent therefor was issued to him. Field never lived in person on the land. He resided in Providence, Rhode Island, but occasionally visited the family of his son-in-law, Mr. Palmer, in California. The land itself was always in the possession of Palmer and family. They occupied it without payment of rent, and improved it at their own expense. In December, 1867, Field appointed Edward F. Palmer, another son of J. C. and Martha L. Palmer, his attorney in fact, " to sell and dispose of any and all lands and real property which I (Field) may own or have any interest in, situated in any portion of said State of California, to such person or persons, for such price and on such terms as to the payments for the same, as to him may seem meet ; and upon such sale or sales to make, execute, and deliver to the purchaser or purchasers sufficient deed or deeds to convey the same, with such covenants therein as he may see fit; to mortgage any of said land in said State of California in which I may be interested, for any purpose, on any terms or for any sum or sums he may see fit, and upon such rates of interest as in his discretion he may see proper, and with such covenants and agreements in such mortgage as to him may seem fit;  *   *   *   giving and hereby granting unto my said attorney full power and authority in and about the premises,   *   *   * with full power to make and institute for the purposes aforesaid, one or more attorneys under my said attorney, and the same again at pleasure to revoke, and generally to say, do, act, transact, determine, accomplish, and promote all matters and things whatsoever relating to the premises, as fully, amply, and effectually, to all intents and purposes, as I, the said constituent, if present, ought or might personally do, although the matter should require more special authority than is herein comprised."

As will be observed, nothing was expressly said in the power of attorney as to the execution of a promissory note or other evidence of indebtedness, and a doubt seems to have arisen in

the minds of the Palmers as to the authority of the donee of the power to execute a promissory note in connection with a mortgage. This doubt was solved by an understanding among themselves, that the donee should convey the land to some third person, who should make the desired note and mortgage, and immediately thereafter reconvey the land to Field. Pursuant to this plan, mortgages were made from time to time upon the land, for the benefit of the Palmers, one of which was made by and through E. L. Beard to the Odd Fellows Bank of San Francisco, to secure a debt of J. C. Palmer. Whatever was done in the way of mortgaging the property under this arrangement was made known to Field by his attorney in fact, and by other members of the Palmer family. Field made no objection to the course pursued by his attorney in fact, but acquiesced in it.

The debt contracted in the name of Beard to the Odd Fellows Bank becoming due, the bank threatened to foreclose the mortgage given to secure its payment. At the same time, some stock transactions which J. C. Palmer had been carrying on in the name of his son Edward F. Palmer were pressing him, and the son Edward himself was laboring under financial embarrassments. Under these circumstances, the plaintiff in this action, at the request of the Palmers, agreed to pay off the mortgage debt for them to the Odd Fellows Bank, and to discharge the stock debts of J. C. and Edward F. Palmer, and did do so; in consideration of which Edward F. Palmer, as the attorney in fact of Field, executed a deed for the mortgaged premises to J. Bruce Palmer, and the latter thereupon executed to the plaintiff the note and mortgage in suit, and then reconveyed the premises to Field. The transaction was made known by the agent to Field, who made no objection thereto. Field soon after came out on a visit to his daughter, and before leaving California conveyed the land by deed of gift to her, and thereupon took from her and her husband a mortgage thereon to secure payment of $17,434, due from them to him. The deed and mortgage last mentioned were executed May 8th, 1877.

Field and the Palmers now seek to repudiate the transaction with the plaintiff, and claim, in the first place, that the deed to

J. Bruce Palmer conveyed to him no interest in the land, and that therefore he mortgaged nothing to the plaintiff; secondly, that in no event did the power of attorney authorize Edward F. Palmer to convey or mortgage the title acquired by Field by the United States patent; and, thirdly, that there could be no such thing as a ratification of the transaction by Field, except by deed or writing.

We will briefly notice these points in the order stated:

The argument upon which it is sought to sustain the position first assumed by the appellants is, that the power of attorney from Field to Edward F. Palmer did not authorize the latter to convey the land without consideration, and that as J. Bruce Palmer paid nothing for the conveyance to him, he got no title by the deed, and therefore mortgaged none to the plaintiff. To adopt this view, we should have to stick in the bark, and close our eyes to the real transaction. This can hardly be expected of a court of equity. The making of the deed to J. Bruce Palmer was a part of the mode adopted by the Palmers and the plaintiff for the execution of the mortgage—the consideration for which was the payment by the plaintiff of the Palmer debt to the Odd Fellows Bank, thus discharging the bank's mortgage on the property, and the cancellation of J. C. and Edward F. Palmer's indebtedness to the plaintiff, amounting, in the aggregate, to the sum of $23,000. This was sufficient *consideration* to support the transaction.

The power of attorney from Field to Edward F. Palmer was executed in December, 1867. At that time, the legal title to the mortgaged property was in the Government of the United States. But Field, by virtue of the Palmers' possession of the land, and of the deed from J. C. Palmer, had filed an application to purchase it from the Government, under the Act of Congress, to which reference has been made, and thus expected to obtain the legal title; and did so by the patent issued April 11th, 1868. The power of attorney must be read in the light of these facts, and also in the light of the further facts, that from first to last the Palmers remained in possession of the land without payment of rent, improved it at their own expense, and mortgaged it repeatedly for the benefit of the family, in precisely the same manner as was adopted in the present

case; and all this with the knowledge of Field, and without objection on his part. Indeed, J. C. Palmer himself testified that the "land was in the family, and considered in the family all along." Again: "This mortgage to the Odd Fellows Bank entered into and formed a part of the $23,000. Mr. Ayres took it up and paid the full face of it. He paid it at the request of us generally—among us a family matter—to save it from foreclosure."

The language of the power of attorney was broad enough to authorize the attorney in fact to mortgage the title conveyed by the patent; and in view of the facts as testified to by the Palmers themselves, there can be no doubt that such was the intention of Field at the time of its execution. That by virtue of the power of attorney, Edward F. Palmer *did* mortgage this title, through Beard, to the Odd Fellows Bank, for the benefit of the Palmer family, clearly appears; and that the fact was made known to Field and assented to by him, is equally apparent. It was this very debt, thus created and thus sanctioned, that formed in part the consideration for the mortgage to the plaintiff. Concerning the latter, Edward F. Palmer testified: "He (Field) was informed afterwards about this. I do not remember, and cannot tell, how long after. Mr. Field was out here afterwards. I cannot say that he objected to it. I do not know whether he ever objected to it. He never objected to it to me. The manner of doing it was suggested by previous mortgages which I had executed in the same way. * * * I have generally informed him on all business matters that I have transacted. I cannot answer any more fully than that. I do not think that I wrote to him immediately about the mortgage to Mr. Ayres. I do not know. He came out here soon after that. It is probable he knew all about it, because when he arrived here he spent his visit with us. He visited one daughter, and then came down and stopped at our house. * * * He greeted me very cordially. * * * I do not remember whether I had written him about this mortgage before he came out. I expect he was notified. He made no complaint to me when he came out about it."

It is worthy of remark, that Mr. Field was not examined as a witness on the trial of this case, nor was his deposition taken.

We are entirely satisfied, from the evidence in the case, that he was fully informed of all that was done by the Palmer family, for whose benefit he seems to have held the title to the land, and never objected to the course pursued with respect to it, but allowed them to deal with the property as they saw proper, under his power of attorney to Edward F. Palmer. As was well said by the Court below: " He has been silent all along, when it was his duty to speak. And in equity, when a man has been silent when in conscience he ought to have spoken, he shall be debarred from speaking when conscience requires him to be silent."

Judgment and order affirmed.

McKEE, J., and McKINSTRY, J., concurred.