PHŒNIX MUTUAL LIFE INSURANCE COMPANY V. CHARLES BROWN ET AL., APPELLANTS, IMPLEADED WITH ROBERT BLACK, APPELLEE.

FILED OCTOBER 3, 1893.   No. 5468.

1. **Appeal:** REJECTED EVIDENCE: PRACTICE IN SUPREME COURT. It is not the practice, where cases are brought into this court by appeal, to receive evidence offered by the appellant and rejected by the district court.  If evidence material to the issues in an equitable proceeding is rejected by the district court the remedy therefor is by petition in error.

2. ——: ——: ——.   If it is within the discretion of this court to receive original evidence in appeal cases, the exercise of such a discretion can be justified only in extreme and exceptional cases, where the injured party is without fault, and would be otherwise without a remedy.

3. **Fraudulent Mortgages:** FORECLOSURE: BONA FIDE HOLDER: BURDEN OF PROOF.  One who attempts, in an action against the equitable owner of land, to assert a mortgage executed in fraud of the defendant's rights by the holder of the legal title, is required to show affirmatively that he took such mortgage for value, without notice of the equities of the defendant, relying upon the apparent ownership of the mortgagor.

4. **Evidence** examined, and *held* to sustain the decree of the district court.

APPEAL from the district court of York county.   Heard below before BATES, J.

*George B. France* and *J. D. Pope,* for appellants.

48

*Harlan & Harlan,* for appellee..

Post, J.

The plaintiff herein, on the 10th day of January, 1891, commenced in the district court of York county an action for the foreclosure of a mortgage executed by the defendant Brown and wife upon the southeast quarter of section twenty-five, township nine, range one in said county; Thomas Riley, who holds a subsequent mortgage, and Robert Black, who claims adversely to Brown, being joined as defendants. A final decree was subsequently entered for the plaintiff, to which no objection is made; also a finding and decree for Black against the other defendants, from which the latter have appealed to this court.

It appears from the cross-petition of Black that in the year 1882 he held the land in controversy by contract with the Chicago, Burlington & Quincy Railroad Company, and that Brown and wife, the latter being his niece, resided with him thereon; that he was then old and infirm, being seventy-five years of age, and that Brown, by representing to him that it was necessary to procure a loan upon the land to pay off the amount due thereon to the railroad company, induced him to assign said contract to him, Brown, who was younger and more active and better able to attend to it, and who agreed, after procuring the necessary loan thereon, to convey the premises to him by deed, subject to the contemplated mortgage; that on the 1st day of April, 1882, said parties entered into a subsequent agreement to the effect that Brown should retain in his own name the east half of the premises above described, and, as a consideration therefor, pay to Black the sum of $125 per annum during the lifetime of the latter; that in pursuance of said agreement Brown and wife conveyed to Black by warranty deed the west half of the quarter section aforesaid, and on the 20th day of January, 1883, in pursuance of the same

agreement, Brown executed and delivered to him a contract in writing as follows:

"This indenture, made this 20th day of January, 1883, between Chas. Brown, of the county of York, state of Nebraska, party of the first part, and Robert Black, of the county and state aforesaid, party of the second part, witnesseth: That the said party of the first part, for value received, do by these presents grant unto the said party of the second part a lien on the following described real estate, to-wit: The east one-half of the southeast quarter (E. $\frac{1}{2}$ S. E. $\frac{1}{4}$) of section number twenty-five (25), township number nine (9) north, of range number one (1) west, of the sixth principal meridian, in the county of York and state of Nebraska, containing eighty (80) acres, be the same more or less, for the sum of $125 per year during the natural lifetime of the second party. Said money to be paid on or before the 1st day of January of each year.

. "It is hereby further stipulated and agreed that if the said first party shall fail to pay the said party of the second part at the time before stipulated, then the said second party, by giving thirty days' notice, may take full possession of the above described land and use it for his own benefit during the full term of his natural life. And the said party of the second part hereby waiving any notice of such election, or any demand for the possession of said premises.

"The covenants herein shall extend to and be binding upon the heirs, executors, and administrators of the first party, and at the death of the second party this lien shall become null and void.

"Witness the hand and seal of the first party aforesaid.
                    "CHAS. BROWN.    [SEAL.]"

That default has been made by Brown, whereby there is now due upon the agreement, set out above, the sum of $1,250; that, relying upon the honesty and good faith of Brown, he neglected to file the aforesaid deed and contract

for record until the 31st day of May 1888, and that on the
20th day of November, 1886, said Brown, without his
knowledge or consent, fraudulently mortgaged the entire
quarter section to the plaintiff for the sum of $1,600; that of
the proceeds of sai·l mortgage, the sum of $900 was applied
to the payment of the mortgage herein first described, and
the balance, $700, was converted by Brown to his own use;
that said Brown, on the 5th day of April, 1889, without
his knowledge or consent, in like manner fraudulently
mortgaged said quarter section to the defendant Riley for
$786.   It is further alleged that by mistake the number
of the range was omitted from the deed, whereby Brown
conveyed to him the west half of said quarter section, by
reason of which the register of deeds refused to file it for
record until the 29th day of September, 1890, on which
day it was filed and recorded without having been cor-
rected.   The petition concludes with a prayer for an ac-
counting and a decree of foreclosure against the east half
of said quarter section, and that his, Black's, title to the
west half thereof may be quieted, and for general equitable
relief.

Brown and wife and Riley join in an answer to the fore-
going cross-petition, in which they allege that in the year
1879, Black, for the purpose of inducing Brown and wife
to remove from Missouri to York county, agreed with them
that if they would board and care for him during his life-
time he would as a consideration therefor deed said property
to said Brown; that in pursuance of said agreement the
latter removed to York county and took up their residence
upon said premises, and that soon thereafter Black made a
will in which he devised said property to Brown; that said
Black has continuously, since the month of November,
1879, made his home with the Browns, who have, during
all of said period, furnished him with boarding, clothes,
medicines, and medical attendance; that from the month
of March, 1885, until the month of May, 1887, Black's

wife, who was an invalid and required especial care, resided with them, and that the care and money bestowed and expended in behalf of Black and wife is of the value of $3,500. They further allege that the proceeds of the $900 mortgage was all used in the payment of debts owing by Black, except the sum of $80, which was expended for improvements upon the land in question. The concluding paragraph of the answer is as follows:

"That in November, 1886, the mortgage and note sued on in this case were given and the money was obtained for the purpose of improving said land and caring for the said Black; that the said defendant Black is an aged man and requires a great deal of care, and in order to do so this defendant Brown is put to a large expense continually; that the said mortgage in suit was made in accordance with the desire of the said Black, and the said Brown is still caring for the said Black and expects to care for him during his natural lifetime, in accordance with the agreement made between the said Brown and the said Black, and the said Brown has fully paid the said Black for each and every of the land described in the petition, by means of taking care of the said Black and his said wife; but notwithstanding this fact, the said Brown expects to care for the said Black during his natural lifetime and to do and perform the agreement that he has made with the said Black, and, except as hereinbefore expressly admitted or denied, this answering defendant denies each and every allegation in the said answer and the said cross-petition of the said Black contained. Wherefore this answering defendant prays that whatever lien, if any, the said Black may have on said premises may be declared to be no lien, and the title to the said premises may be declared to be in the said Brown, subject to the mortgages of the plaintiff and the defendant Riley, and that this defendant may have judgment accordingly, and in event that this defendant cannot have decree as herein prayed that he may have judgment against the

said Black for the said sum of $3,500, and that the same may be declared to be a lien upon said real estate, subject to the lien of the mortgages above spoken, and for such other and further relief as may be just and equitable."

Riley also filed a separate answer and cross-bill, in which he sets up his mortgage and prays for a decree of foreclosure. A reply was filed by Black in which he admits having made his home with Brown as alleged, and that during a part of said time his wife, now deceased, likewise resided with him upon said premises. But he alleges that Brown has been fully paid for all money expended, as well as board and lodging furnished himself and wife, by his labor on the land during the time in question and by the proceeds of a team, wagon, and harness, and other farming implements and grain turned over to and converted by Brown. He further alleges that Brown has had the use of the west half of the quarter section above described from 1882 until 1891, inclusive of both years, which is worth $160 per year. He also prays for an accounting and judgment, etc.

It is apparent from the above statement that there are two branches of the controversy, viz., (1) questions in dispute between Brown and Black, and (2) questions with respect to the rights of Black as against Riley.

The decree, so far as it relates to the first branch of the case, is as follows:

"The court further finds that on the 20th day of January, 1883, the defendant Charles Brown for value executed and delivered to Robert Black an agreement in writing duly acknowledged, and thereby promised to pay to said Robert Black the sum of $125 per year during the natural life of said Black, and to secure the payment of the said annuity the said Brown granted unto the said Black a lien on the E. $\frac{1}{2}$ S. E. $\frac{1}{4}$ section 25, township 9 north, range 1 west. Said lien was duly recorded in the office of the county clerk of York county, Nebraska, on May 31, 1888. The

said Brown has not paid said annuity, or any part thereof, whereby said lien has become absolute, and there is due said Robert Black from the said Charles Brown the sum of $400, and said Black is entitled to have his said lien enforced, and the same is the second lien on said E. $\frac{1}{2}$ of said quarter section, subject only to the lien of the plaintiff Phœnix Insurance Company. It is therefore ordered and adjudged by the court that unless the said Charles Brown shall, within twenty days from the entry of this decree, pay, or cause to be paid, to said Robert Black the said sum of $400, that his equity of redemption be foreclosed, and an order of sale shall issue for the sale of said land, and that the proceeds thereof be brought into court to be applied in satisfaction of said claim. It is further ordered and adjudged that the conveyance of the W. $\frac{1}{2}$ S. E. $\frac{1}{4}$ section 25, town 9, range 1, dated April 1, 1882, whereby the said Charles Brown and wife conveyed by warranty deed to said Robert Black said W. $\frac{1}{2}$ of said quarter section, was absolute, and the title to said land is hereby quieted in said Robert Black as against the said Charles Brown and the said Thomas Riley, and said defendants are hereby enjoined from setting up any claim to said land; to all of which the defendants Brown and Riley duly except, and forty days given to reduce exceptions to writing."

The grounds of Brown's claim at this time to the entire quarter section is not clear from the record, although his version of the reasons for the assignment to him in the first instance of the contracts for the land is reasonable and must be accepted because not seriously controverted. It is, in short, that Black, in order to defeat the claim of his wife, who was then living in the state of Iowa, requested him to procure and hold the legal title to the land. But his explanation of the subsequent conveyance of the west half and the mortgaging of the east half thereof to Black, viz., to prevent it from descending to his heirs in case Black should survive him, is less reasonable. And, in

view of the conflict between the parties, who are the only
surviving witnesses to the transaction, the finding of the
district court is clearly right.   Complaint is made of the
excluding of evidence of the value of the support and care
furnished for Black and wife.   Under the issues presented
by the pleadings Brown should have been permitted to
prove the value of the care and support supplied by him
for the wife of Black.   But the offer, so far as it included
the support of Black himself, was properly rejected, for
the reason that the only contract, express or implied, for
the rendering by Brown of the service charged, is the al-
leged agreement of Black to devise the land by will to him.
This agreement, it appears from the answer of Brown, con-
tinues in full force and effect, and the will executed in his
favor unrevoked.   He is, so far as appears from the record,
in a position, on the death of Black, to insist upon the con-
ditions of that agreement.   It requires no argument to
prove that he cannot recover in this action from Black for
the same consideration for which he claims the land
through the will in his favor.

It is suggested that we should, on this appeal, receive
the evidence rejected by the district court and allow an ac-
counting here of all the matters in issue.   This was de-
signed as a court of appellate jurisdiction, with the few
exceptions enumerated in section 2, article 6, of the con-
stitution.   But assuming that we have the power to receive
original evidence in cases brought before us by appeal,
there is reason to doubt both the wisdom and the propriety
of such a practice.   If, as argued by counsel, the receiving of
original evidence in such case is within the discretion of the
court, the exercise of that discretion can be justified only in
extreme and exceptional cases in order to prevent a certain
failure of justice.   In this case the appellant Brown has
little reason to complain.   The rejection by the district
court of his cause of action for caring for the wife of
Black, leaves him at liberty to prosecute an action there-

for, while he is in a position to assert his claim to the land on the death of the appellee. Whether the several claims of the latter, including rents and the proceeds of the mortgage above described, are all concluded by the decree is not so apparent. But as he is satisfied with the result we can see no grounds for interference.

The only remaining question is that of the rights of Riley by virtue of the mortgage executed in his favor by Brown. We have seen that Black was at the time said mortgage was executed the equitable owner of the west half of the quarter section in controversy. It follows that the mortgage is void as against the latter unless Riley received it in good faith without knowledge of Black's equities. And he is required to show affirmatively that he took it relying upon Brown's apparent title thereto. (*Bowman v. Griffith*, 35 Neb., 361.) Upon that proposition there is an entire failure of proof. Riley himself was not sworn. The only evidence on that branch of the case is the testimony of Brown, who swears that the mortgage was given for a past due indebtedness, incurred by him as surety for a third party. The evidence falls far short of proving Riley to be a mortgagee in good faith, hence the decree of the district court is

AFFIRMED.

THE other judges concur.