CHARLES BROWN, APPELLANT, V. JAMES MURPHEY ET AL., APPELLEES.

FILED MAY 4, 1898.   No. 7936.

**Quieting Title:** EVIDENCE: REVIEW. The evidence in this case examined, found to sustain the finding of the district court, and to leave no question of law before the court for decision.

10

APPEAL from the district court of York county. Heard below before WHEELER, J. *Affirmed.*

*George B. France* and *Merton Meeker*, for appellant.

*N. V. Harlan*, contra.

IRVINE, C.

Omitting for the sake of clearness unessential details, although these are entitled to some evidential effect, the facts of this case are as follows: In 1879 Robert Black, a man seventy-five years of age, was the occupant of the southeast quarter of section 25, township 9 north, of range 1 west, in York county. The title was in the Burlington & Missouri River Railroad in Nebraska, and Black held it under a contract of purchase. In that year Charles Brown, whose wife was Black's niece, removed with his family from Missouri and began to live upon the land, remaining there with Black until shortly before this litigation began. In 1882 Black assigned to Brown his contract for the purchase of the land. Brown paid what was due thereon and obtained a deed. At the same time he made a mortgage thereon in part at least representing a loan whereby he secured the money wherewith he made the payment. He then conveyed to Black the west half. He retained the title to the east half, but executed to Black what was styled a lien contract, but which was in legal effect a mortgage to secure an annuity of $125 payable to Black during the latter's life. The first mortgage was thereafter foreclosed and the east half sold to satisfy it, and arrears of the annuity. Then Black conveyed the west half to Murphey. Two suits were then instituted, the precise nature of which is not indicated by the record before us. One of them was by Brown against Black and Murphey, apparently to set aside the deed to Murphey and establish a right in Brown to the land. The other was by Murphey against Brown, ap-

parently to quiet title and enjoin Brown from interfering
with Murphey's possession. By stipulation these two ac-
tions were consolidated, amended pleadings being filed
with Brown as plaintiff and Black and Murphey as de-
fendants. By his amended petition Brown alleged that
he had removed his family to Nebraska and gone upon
the land in pursuance of a contract with Black whereby
Brown was to farm the land and take care of Black dur-
ing the lifetime of the latter, Black agreeing that he
should have possession of the land and that on Black's
death it should become Brown's absolutely. Further,
that Black in pursuance of the contract had executed a
will devising the land to Brown; that Black, by reason
of age and consequent infirmities, had become incompe-
tent to contract, and while so incompetent and through
undue influence had been induced by Murphey to convey
to the latter, Murphey having full notice of Brown's
rights, and paying no consideration. It was also alleged
that Murphey had induced Black to make an attempted
revocation of the will. Brown asked that the title and
right of possession be quieted in him and that Black and
Murphey be enjoined from conveying or incumbering the
land. By answer and cross-petition Black and Murphey
denied the contract alleged by Brown, and alleged that
whatever contract was made in 1879 was abrogated in
1882, when a contract was made whereby Brown was
for his services to have the east half charged with an an-
nuity. They also pleaded that the conveyance to Murphey
was in pursuance of an agreement whereby Murphey
was to have the land in consideration of his supporting
Black and furnishing him a home. They further pleaded
as an adjudication the foreclosure proceedings above
mentioned, and which reached this court and were deter-
mined in 1893. (*Phœnix Mutual Life Ins. Co. v. Brown*, 37
Neb. 705.) They prayed that Murphey's title be quieted
and Brown enjoined from interfering. A large volume
of testimony was taken, but before final submission
Black died. This fact was set up by supplemental peti-

tion, Brown asking to be decreed the owner in fee. More proof was taken, and finally a judgment was entered finding generally for the defendants and quieting title in Murphey. Brown appeals.

The appellant relies largely on the doctrine of *Bird v. Pope*, 73 Mich. 483. That case would entirely support his contention had he obtained in the trial court a finding of facts according to his pleadings; but unfortunately for that contention the findings were against him and we do not feel warranted in distributing them. On the other hand the appellee relies greatly on the effect of the foreclosure proceedings as an adjudication. By a reference to that case it will be found that the only questions there properly litigated were those affecting the validity and priorities of the several liens. The plaintiff's mortgage was established as the first lien, the annuity mortgage of Black as a second, upon the east half, and a subsequent mortgage executed by Brown was cut out altogether as to the west half, it being properly held that without regard to Brown's ultimate rights to that half the title was then in Black in fee, and that the rights of Brown under his contract and Black's will could not then be determined. That the decision went no farther is evident from the following language from the opinion: "This agreement, it appears from the answer of Brown, continues in full force and effect, and the will executed in his favor unrevoked. He is, so far as appears from the record, in a position, on the death of Black, to insist upon the conditions of that agreement." While that decision is not therefore, strictly speaking, *res judicata* as to the present controversy, it is quite probable that there was involved incidentally the determination of some issues of fact which would conclude the parties here as to such issues. We need not, however, enter into a very close analysis of the two cases for the purpose of applying the principle indicated, because the adjudication is pleaded on behalf of the defendants, and treating the whole matter as one at large, the evidence supports

the finding in their favor. The evidence for Brown would have supported a different finding; but Black's testimony, not given directly here, but introduced as given in the other case, is to the effect that when he assigned his contract to Brown, and took a reconveyance of the land in controversy, it, was with the understanding that Brown was only to have the east half charged with the annuity. While all the evidence tends to confirm Brown's theory of the original agreement, this tends to show that it was superseded by another, whereby no vested interest was left in Brown as to the west half. The whole question of fact might be disposed of on the ground that the instruments whereby the later contract was effected or evidenced were introduced in evidence but do not appear from the bill of exceptions. This might be over-technical because their nature and contents are by the pleadings and other evidence sufficiently disclosed. There can be no doubt that Brown conveyed the west half to Black without any reservation in the deed; that he retained the east half, and by the mortgage referred to charged it with an annuity in Black's favor. It also seems that he had drawn and presented to Black a lease of the west half which Black refused to execute. All this tends to corroborate Black and sustain the finding. It being thus determined that Brown had no vested right in the land immediately in controversy, the issues as to Black's competency to convey to Murphey, the consideration for that conveyance, the circumstances and influences surrounding its execution, and Murphey's knowledge of the past relations between Brown and Black, all become immaterial. As to Black's competency to revoke the will in Brown's favor and to execute another in favor of Murphey, as he seems to have done, and the validity of the latter will, it is sufficient to say that, as Brown had no vested estate in or contractual right to the land, those questions could only properly arise on the proposition of one of the wills for probate in the proper forum.

Complaint is made of the action of the district court in allowing an injunction *pendente lite* against Brown, it being asserted that Brown was thus dispossessed before trial and without due process. We cannot notice this argument, because the record before us begins with the stipulation for consolidating the cases and the amended pleadings. The injunction was apparently allowed at a prior stage of the case. The pleadings on which it was based, the evidence on which it was granted, and the order allowing it are alike absent from the record.

AFFIRMED.