GUTHRIE & COMPANY v. M. ALICE RAY.

FILED APRIL 11, 1893.   No. 5018.

Subrogation: PAYMENT OF NOTES BY SURETY. One A mortgaged her separate estate to secure loans from a bank in favor of a private corporation to the extent of $5,000. It was agreed that as each loan was effected the corporation should deposit notes held by it as collateral security for the loan, the security given by it to be merely contingent. A large number of loans were made in this way and notes as collateral deposited with the bank. Afterwards the bank required A to pay the amount due to it. This she did by mortgaging her separate estate, and she thereupon received from the bank the collateral notes held by it. *Held,* That the testimony clearly established the fact that the notes were held by the bank in good faith before due to secure a loan and debt, and that as A, as surety, had paid the same, she was subrogated to the rights of the bank and stood in its place.

ERROR from the district court of Lancaster county. Tried below before FIELD, J.

*A. J. Cornish,* for plaintiff in error.

*A. G. Greenlee* and *Marquett, Deweese & Hall, contra.*

MAXWELL, CH. J.

In December, 1883, the Ray Plow Company, of Burlington, Iowa, was anxious to obtain advances of money

from the Merchants National Bank of that place. To secure the bank it was proposed to deliver to the bank security upon the property of the defendant in error to the amount of $5,000, with this understanding: that the plow company should deliver to the bank from time to time, as it drew money, certain notes received by it in the course of its business. Under this arrangement the defendant in error gave the security, and the plow company from time to time deposited collateral notes with the bank and received money to be used in its business. Under this arrangement the following notes were delivered to the bank as collateral security for said loans: "Note for $400, dated December 1, 1883, and due June 1, 1884, executed by Guthrie & Co. to the Ray Plow Company. Note for $500, dated August 26, 1884, due October 1, 1885, executed by Guthrie & Co. to the Ray Plow Company. Note for $500, dated August 26, 1884, due October 1, 1885, executed by Guthrie & Co. to the Ray Plow Company. Note for $108.60, dated March 10, 1884, due October 1, 1884, executed by C. A. Hamilton to Guthrie & Co., and by them indorsed to the Ray Plow Company. Note for $256.50, dated March 10, 1884, due December 1, 1884, executed by Hayzlett & Green to Guthrie & Co., and by them indorsed to the Ray Plow Company. Note for $256.50, dated March 10, 1884, due January 1, 1885, executed by Hayzlett & Green to Guthrie & Co., and by them indorsed to the Ray Plow Company." The jury returned a verdict in favor of the defendant in error for the sum of $3,-177.63, upon which judgment was rendered. The testimony shows that prior to giving these notes Guthrie & Co. and the Ray Plow Company had entered into an agreement as follows:

"BURLINGTON, IA., Dec. 1, 1883.

"Agreement made and entered this day by and between the Ray Plow Company, of Burlington, Iowa, party of the first part, and Guthrie & Co., of Lincoln, Nebraska, party

of the second part, whereby the party of the first part does appoint the second party their agents for the sale of their products in the state of Nebraska, excepting ——, for a period of one year from this date, and subject to the following conditions: The party of the first part to use all diligence possible towards filling the orders of the said second party promptly and with goods made in a good and workmanlike manner, and subject to the usual printed warranties. To allow the second party a commission of ten per cent on the net sales, said commission to be retained from the proceeds of sales and in the proportion of cash and notes as received. It is agreed that commission on goods returned from any cause and upon such sales as are not collectible are to be refunded to first party. To allow also the amount of freights paid by second party in case quantities and rates to Lincoln, Nebraska, on such goods coming under this contract, said freights to be deducted from the proceeds of sales and allowed as credits on account at semi-annual settlements, July 1st and December 1st.

"The second party agrees to thoroughly canvass the trade in Nebraska covered by this contract, and does hereby make their order for 500 check rowers, including those now on hand, and to make further orders as the trade requires. To sell check rowers only to first-class dealers, both as to care of selling and of operating goods, and of good reputation and ability for payment of their debts. To take all orders upon the blanks furnished by the first party, and to send copies of such orders to first party from time to time. To sell check rowers at such prices as are ruling and current on such checks as the Haworth, Barnes & Joliet, procuring at all times as high prices and as short time as are obtainable. To do all expert work necessary in operating successfully without charge to first party, but to notify first party promptly of such check rowers as are unable to make work satisfactorily, and their failure or neg-

lect to make same work successfully, such check rowers are to be returned or held subject to order and expense of first party. Second party also agrees to make good any defect promptly and as cheaply as possible to the first party whose expense this is. To such first party, their note due October 1, 1884, for one-half of the amount of check rowers as received, but having the privilege of cash payment June 1, for a discount of 10 per cent to apply as credits on their October 1st note, all dealers' notes guaranteed by them at maturity on or about October 1, 1884. To tender an account of sales at close of each month and excess then due (less commission) over the amount of their notes, given to be settled by good dealers' notes, drawn up in good form, and to be sent in as promptly as possible. It is understood that commission allowed by first party to second party covers all charges for selling, receiving, handling, storing, insuring, forwarding, collecting, etc. Second party also agrees to look after and to procure best possible security on such accounts and notes as are given to first party when necessary and without expense to first party. The wagons now on hand to be sold at best prices and terms obtainable, for which a commission of six dollars is to be deducted on amount then due in excess of the $800 notes, given this day as an advance payment on the seventeen wagons now on hand, is to be settled by dealers' notes as heretofore. Other goods, now in store of Guthrie & Co., subject to the same commissions, terms, etc., and such other goods as may be ordered by Guthrie & Co. to be subject to a special agreement.

"Witness our hands this day above written.

> "RAY PLOW COMPANY,
> "By GEORGE O. RAY, *Treasurer*.
> "GUTHRIE & COMPANY."

The notes in question were delivered to the plow company under said agreement, and by it delivered to the bank as collateral security. The bank required the defendant in

error to pay the amount due from the plow company, which she did by mortgaging her separate estate, and upon the payment of the debt the bank turned over the collateral notes in its hands to the defendant in error, and she brings this action thereon. There are many questions discussed in the brief of the defendant in error which do not arise in the case and therefore will not be considered. These facts are clearly established by the proof, viz., that the bank was a *bona fide* holder of the notes sued on, and that the defendant in error had in good faith mortgaged her separate estate as surety to secure the loans made by the bank to the Ray Plow Company, and that she, upon paying the amount due to the bank, had received from it the notes in question. These facts being clearly proved, she stands in the same position as the bank, and may recover on the notes. The judgment is right and is

AFFIRMED.

THE other judges concur.