ARLINGTON STATE BANK ET AL., APPELLANTS, V. EDMUND PAULSEN ET AL., APPELLEES.

FILED FEBRUARY 9, 1899.   No. 8608.

1. **Wills:** VESTING OF TITLE. Whether the title to the testator's real estate vests at his death in his executors or heirs is not to be determined solely by the presence in, or absence from, the will of some particular words of conveyance, but determined so as to accord with the testator's intention as deducible from an examination of the entire will.

2. ———: EXECUTORS: POWERS: PRESUMPTION. The presumption is that the executors are invested with such power, and all the power, necessary to enable them to carry out the testator's intention with reference to the disposition directed by him to be made of his property.

3. ———: VESTING OF TITLE. The will of a testator directed his executors to pay his debts out of his personal estate, and if that proved insufficient, "to sell and convey" his real estate for that purpose, and "to sell and convey" his real estate and pay the proceeds over in certain proportions to certain heirs. *Held*, That the legal title to the real estate of the testator vested on his death in his executors.

4. ———: CONSTRUCTION. The executors of such will conveyed the testator's real estate to one of his heirs upon the sole consideration that she would mortgage it to secure money for the use

of the executors and then reconvey to the executors, subject to such mortgage. This was done. *Held*, That the transaction between the executors and heir was not a sale and conveyance within the meaning of the will.

5. ———: ———: EXECUTORS: POWERS. The will gave the executors power to convey the real estate only to an actual *bona fide* money purchaser thereof.

6. ———: ———: ———: CONVEYANCES. The conveyance by the executors to the heir was a voluntary one, and, as to her and her grantees with notice, void at the suit of the estate and its creditors, and at the suit of prior judgment creditors of the beneficiaries of such estate.

7. Executors: CONVEYANCES: INNOCENT PURCHASER. One who took from such heir a mortgage on the real estate so conveyed to her by the executors, having knowledge at the time that the heir had not actually purchased such real estate, or one who, having knowledge of such facts in the premises as ought to put a prudent man on inquiry as to the character of the heir's title, took such mortgage without inquiry, when a reasonable investigation would have revealed the defect in the heir's title, is not a subsequent innocent purchaser and entitled to protection as such.

8. ———: ———: ———: PLEADING. That one is a subsequent innocent purchaser of real estate is an affirmative defense, which the claimant, to avail himself of, must plead, and upon him is the burden of proof to establish it.

9. ———: ———: ———: ———. One who claims the protection of the rule applicable to subsequent innocent purchasers without notice is not relieved from the duty of affirmatively pleading and proving the facts which he claims show him to be such innocent purchaser, because he claims under the vendee of an executor, and the conveyance from such executor is attacked by the judgment creditors of the beneficiaries of the trust property as having been made without consideration to the knowledge of the one claiming to be an innocent purchaser.

10. Wills: EXECUTORS: INTEREST. Where the will of a testator vests the legal title to his real estate in his executors and directs them to sell and convey it and pay the proceeds over in certain proportions to certain heirs, the interest of such heirs in such proceeds is property.

11. ———: HEIRS: INTEREST. But the heirs have no interest in the real estate as such, and it cannot be seized on attachment by their creditors, nor is a judgment against them a lien thereon.

12. ———: ———: JURISDICTION. The district courts of the state are invested with ample powers to enjoin executors from diverting trust property; to annul conveyances made by them without

consideration in violation of the trust, and, on application of a prior judgment creditor of a beneficiary of such trust property, when such creditor has exhausted his legal remedies, to compel the interest of such beneficiary in such property, if not exempt, to be applied to the payment of his debts.

13. ———: ———: POWERS: PRESUMPTION. The presumption is that a will which simply clothes executors with power "to sell and convey" the testator's real estate for paying debts and to make distribution of the remaining proceeds to certain persons does not confer on the executors the power to mortgage such real estate.

14. ———: ———: ———: ———. But such presumption may be overthrown when an examination of the whole will shows that the disposition directed by the testator to be made of his property is of such a character as authorizes the inference that it was the testator's intention that his executors should have power to mortgage his estate.

15. ———: ———: CONVEYANCES. When executors of a will have individual interests in the testator's property, whether a conveyance made by them shall be construed as an execution of the trust or a conveyance of their individual interests is a question of intention; and if from the conveyance itself it is apparent that it was intended as an execution of the trust in pursuance of the will, it will be so construed.

16. ———: ———: TRUSTS. Where a trustee wrongfully makes a voluntary gift or conveyance of trust property, whether a subsequent creditor of the beneficiaries of such trust property may successfully invoke the aid of a court of equity to annul the wrongful disposition made of the trust fund, to restore it to the trustees and cause it to be applied to the payment of debts of the beneficiaries, not decided.

17. Subrogation. The doctrine or rule of subrogation is not a fixed and inflexible rule of law or equity. It does not owe its origin to statute or custom. It is a creature of the equity courts, invented and applied by them to do justice or prevent an injustice being done in a particular case and under a particular state of facts, where the law is powerless in the premises.

18. Wills: EXECUTORS: MORTGAGE BY HEIR. A testator directed his executors to sell and convey his real estate and pay the proceeds over in certain proportions to certain heirs. The executors deeded the real estate without consideration to one of the heirs, and she mortgaged it to a trust company and a bank. In a suit by the judgment creditors of the heirs to annul the conveyances of the executors and the mortgages made by the heir the creditors were given a decree as prayed, but *held* that the mortgagees were entitled to judgments against the testator's estate for such of the moneys represented by their mortgages as were actually applied to the payment of debts allowed by the probate court

against the testator's estate, as were actually used to discharge taxes against the real estate of the testator, as were actually applied to discharge debts of the testator secured at the time of his death by mortgages on his real estate, such judgments to be liens against the property of the testator's estate as the allowed claims of other creditors and paid in due course of administration.

APPEAL from the district court of Douglas county. Hear below before DUFFIE, J. *Reversed.*

*E. Wakeley* and *A. C. Wakeley*, for appellants:

A mere power of sale does not confer upon the donee of the power authority to execute a mortgage. (*Bloomer v. Waldron*, 3 Hill [N. Y.] 361; *Russell v. Russell*, 36 N. Y. 581; *Coutant v. Servoss*, 3 Barb. [N. Y.] 128; *Ferry v. Laible*, 31 N. J. Eq. 567; *Hoyt v. Jaques*, 129 Mass. 286; *Stokes v. Payne*, 58 Miss. 614; *Hubbard v. German Catholic Congregation*, 34 Ia. 31; *Price v. Courtney*, 87 Mo. 387; *Willis v. Smith*, 66 Tex. 31; *Patapsco Guano Co. v. Morrison*, 2 Woods [U. S. C. C.] 395; *Wilson v. Maryland Life Ins. Co.*, 60 Md. 152; *Butler v. Gazzam*, 81 Ala. 491; *Switzer v. Wilvers*, 24 Kan. 384; *Albany Fire Ins. Co. v. Bay*, 4 N. Y. 9; *Wood v. Goodridge*, 6 Cush. [Mass.] 117.)

Whenever a plaintiff establishes a right to attack or set aside a conveyance of lands in the hands of a grantee by reason of actual fraud, or other sufficient reason, a party holding under such grantee by deed or mortgage, in order to protect himself, must both plead and prove that he is a *bona fide* purchaser or incumbrancer. (*Tompkins v. Anthon*, 4 Sandf. Ch. [N. Y.] 97; *Hunter v. Simrall*, 5 Litt. [Ky.] 62; *Boone v. Chiles*, 10 Pet. [U. S.] 177; *Larrowe v. Beam*, 10 O. 498; *Gallatian v. Cunningham*, 8 Cow. [N. Y.] 361; *Cunningham v. Erwin*, Hopk. Ch. [N. Y.] 48.)

The sale was to be for the payment of debts and the executors do not take title. (*Haskell v. House*, 3 Brev. [S. Car.] 242; *Greenough v. Welles*, 10 Cush. [Mass.] 557; *Den v. Young*, 23 N. J. Law 478; *Perkins v. Presnell*, 100 N. Car. 220.)

The transaction with Lammrich was in no sense of the term a sale. (*Trudo v. Anderson*, 10 Mich. 363; *Taylor v. Starkey*, 59 N. H. 142; *Hampton v. Moorhead*, 62 Ia. 91; *Taylor v. Galloway*, 1 O. 232; *Dupont v. Wertheman*, 10 Cal. 354.)

*Paul Charlton*, also for appellants.

References as to notice and *bona fides:* *Drey v. Doyle*, 99 Mo. 459; *Reeder v. Bair*, 4 O. 447; *Mack v. Brammer*, 28 O. St. 508; *Anglesey v. Colgan*, 14 Atl. Rep. [N. J.] 627; 2 Devlin, Deeds secs. 727-729, 738, 741-743, 801-821; *Rice v. Winters*, 45 Neb. 517; 2 Blackstone, Commentaries 446 Benjamin, Sales sec. 1; 21 Am. & Eng. Ency. Law 446; *Dudley v. Sumner*, 5 Mass. 438; 4 Am. & Eng. Ency. Law 432; *Roll v. Rea*, 12 Atl. Rep. [N. J.] 905; *Attorney General v. Abbott*, 28 N. E. Rep. [Mass.] 346; *Gillespie v. Rogers*, 16 N. E. Rep. [Mass.] 711; *Sickles v. White*, 17 S. W. Rep. [Tex.] 543; *Mason v. Black*, 87 Mo. 329; *Rabb v. Flenniken*, 7 S. E. Rep. [S. Car.] 597; *Johnson v. Prairie*, 91 N. Car. 159; *Moore v. Smith*, 19 S. W. Rep. [Tex.] 781; *Blagge v. Moore*, 23 S. W. Rep. [Tex.] 466; *Rush v. Mitchell*, 32 N. W. Rep. [Ia.] 367.

*C. A. Baldwin*, also for appellants.

References: *Schroeder v. Wilcox*, 39 Neb. 156; *Stokes v. Payne*, 58 Miss. 614; *Albany Fire Ins. Co. v. Bay*, 4 N. Y. 26; *Page v. Cooper*, 16 Beav. [Eng.] 396; *Hoyt v. Jaques*, 129 Mass. 287; *Ferry v. Laible*, 31 N. J. Eq. 566.

*Hamilton & Maxwell*, for appellee Omaha Loan & Trust Company:

The State Bank and Omaha National Bank are subsequent creditors and cannot impeach the mortgage. (18 Am. & Eng. Ency. Law 247; *McCauley v. Holtz*, 62 Ind. 205; *Parks v. Ingram*, 22 N. H. 283; *Steenbergen v. Gowdy*, 19 S. W. Rep. [Ky.] 186; *McDonald v. The Tom Lysle*, 48 Fed. Rep. 690; *Dunnington v. Kirk*, 22 S. W. Rep. [Ark.] 430; *Frazer v. Miller*, 35 Pac. Rep. [Wash.] 427; *Shuford*

*v. Chinski*, 26 S. W. Rep. [Tex.] 141; Wait, Fraudulent Conveyances [2d ed.] sec. 105; *Usher v. Hazelline*, 5 Greenl. [Me.] 471; *Miller v. Miller*, 23 Me. 22; 1 Freeman, Judgments [4th ed.] sec. 244.)

The attachment proceedings and judgments of the appellants Arlington State Bank and Omaha National Bank created no lien upon the land. (*Meck v. Briggs*, 54 N. W. Rep. [Ia.] 456; 2 Pomeroy, Equity Jurisprudence, p. 572, sec. 1011; *Hale v. Hale*, 33 N. E. Rep. [Ill.] 858; *Wicker v. Ray*, 118 Ill. 472; *Poor v. Robinson*, 10 Mass. 131; *Hitchcock v. Southern Iron & Timber Co.*, 38 S. W. Rep. [Tenn.] 588; *Prouty v. Mather*, 49 Vt. 415; *Heard v. Hall*, 16 Pick. [Mass.] 457; *Favill v. Roberts*, 50 N. Y. 222; *Lee v. Getty*, 26 Ill. 77; *Adler v. Hellman*, 55 Neb. 266; *Johnson v. Johnson*, 36 Neb. 700; *Stewart v. Rogers*, 25 Ia. 395; *Price v. Sanders*, 60 Ind. 310; *Whitesel v. Hiney*, 62 Ind. 168; *Noble v. Hines*, 72 Ind. 12; *Moore v. Lampton*, 80 Ind. 301.)

The will of John T. Paulsen conferred power on the executors to mortgage the real estate. (18 Am. & Eng. Ency. Law 877, and note 2; *Dabney v. Manning*, 3 O. 321; *Rowe v. Beckett*, 30 Ind. 154; *Rowe v. Lewis*, 30 Ind. 163; *Stokes v. Payne*, 58 Miss. 614; *Waterman v. Baldwin*, 26 N. W. Rep. [Ia.] 435; *Faulk v. Dashiell*, 62 Tex. 642; *McCreary v. Bomberger*, 24 Atl. Rep. [Pa.] 1066; *Kent v. Morrison*, 153 Mass. 137; 18 Am. & Eng. Ency. Law, note pp. 941, 942; 2 Washburn, Real Property 708, note 3; *Loebenthal v. Raleigh*, 36 N. J. Eq. 172; *Pennsylvania Life Ins. Co. v. Austin*, 42 Pa. St. 263; *Zane v. Kennedy*, 73 Pa. St. 192; *Kent v. Morrison*, 26 N. E. Rep. [Mass.] 427; *Williams v. Woodard*, 2 Wend. [N. Y.] 492; 9 Myer, Federal Decisions sec. 912; *Butler v. Huestis*, 68 Ill. 594; *Ayers v. Palmer*, 57 Cal. 309; Sugden, Powers 267; *Singleton v. Scott*, 11 Ia. 589.)

*Cowin & McHugh*, for appellee United States National Bank.

*F. A. Brogan*, also for appellees.

RAGAN, C.

John T. Paulsen died in the city of Omaha on September 5, 1889, leaving a widow and six children, having first made his last will and testament, which was subsequently duly probated. The testator left a widow, Anna C. Paulsen, four sons, Edmund, Henry K., Herman F., and William Paulsen, and two daughters, Augusta Paulsen (now Lammrich), and Emma C. Paulsen (now Woolridge). By his will the testator appointed his widow and his sons, except William, to be his executors, without bond. The persons so nominated by the testator were by the probate court of Douglas county duly appointed executors of the will and accepted the trust. The testator died seized of real estate estimated to be worth from three to four hundred thousand dollars. Some of this real estate was incumbered with mortgages. More than $20,000 of claims, exclusive of the debts secured by real estate mortgages, were filed against the testator's estate and allowed by the probate court. The will of the testator, so far as material to this controversy, was as follows:

"It is my will, and I do direct, that all my just debts be fully paid out of my estate in the manner hereinafter provided.   *   *   *

"It is my will, and I do direct, that any and all debts and demands against me and existing at the time of my decease be fully paid, and to that end and for that purpose I do direct that in the payment of my debts my executors shall use, (1) any and all moneys I may have on hand at my decease; (2) the avails of any debts, claims, demands, notes, and mortgages that may be due and owing to me at my decease; and should the amount of my liabilities at my decease exceed the amount of money so on hand and the amount so due me as aforesaid, or should my said debts exceed the amount that can be realized on such claims, then I do direct that any such balance be paid out of the proceeds arising from the sale or sales of any land or lots of land [of] which I may die

seized. If it shall become necessary for any executors to sell any of my real estate for the purpose of paying any debt or liability existing against my estate, I do direct and empower my executors hereinafter named to sell, and by deed convey, any such part or parts of the real estate of which I shall die seized as shall be necessary for that purpose. And it is my desire and my will, and I do direct, that in making such sale or sales that my executors shall make sale of such part of my real estate, and on such terms and in such manner as in the judgment of my executors shall be for the best interests of all persons interested in my estate. After my debts have been fully paid, as hereinbefore provided, I do direct, authorize, and empower my executors to make a sale or sales of any part or all of the real estate of which I shall die seized, at such time and in such manner as shall in the judgment of my executors be for the best interests of my estate and all persons interested therein, and to that end and for that purpose I do authorize and empower my said executors, if they shall see fit and proper so to do, to divide, subdivide, and plat any portion thereof for such sale, and I do authorize and empower my said executors to sell and convey by good and sufficient deed to any purchaser or purchasers of any part of my said real estate so by them sold, thereby conveying to such purchasers the full and complete title to the premises so purchased by them. The proceeds arising from any and all sales of any part of my said real estate, after my debts have been fully paid as such proceeds shall accumulate from time to time, and all moneys that are not necessary to be used in paying off any existing indebtedness that shall come to the hands of my executors as such executors of my estate from any source whatever, I do give and bequeath to my said wife and children as follows: * * *

"It is my will, and for a more perfect understanding of this my will and to avoid the possibility of a doubt as to my intention and purpose here I do again declare

it to be my will, and I do direct and empower my execu- tors acting and performing the duties of this trust to use their own judgment and discretion, subject to the provisions hereinbefore made, as to the proper time and manner of making sale or sales of any part of my real estate; and I hereby authorize and empower my said ex- ecutors to sell, deed, and convey the same and divide and pay over the proceeds of such sale as hereinbefore pro- vided."

The testator, by his will, also set apart certain specific- ally described real estate and gave his wife the use of the rents and profits thereof during her natural life. This real estate is not involved in the controversy here. On December 30, 1891, the executors executed a deed to Augusta Lammrich, and thereby conveyed to her a large part of the real estate of which the testator died seized. The consideration expressed in this deed was $150,000. As a matter of fact this deed was a voluntary convey- ance. The executors did not sell this real estate to Augusta Lammrich, and she paid nothing whatever for the conveyance to her. She was one of the heirs of the Paulsen estate and practically without means. On De- cember 31, 1891, the widow and all the heirs of the testator, except William Paulsen, executed and delivered to the Omaha Loan & Trust Company a note for $25,- 000, drawing interest at the rate of six per cent per annum from date until maturity, interest payable semi- annually, evidenced by coupons attached thereto. To secure the payment of this note Augusta Lammrich, on said date, executed and delivered to said Omaha Loan & Trust Company a mortgage upon all the real estate previously conveyed to her by the executors. Subse- quently Augusta Lammrich reconveyed all said real es- tate to the executors, subject to the mortgage given thereon by her to the trust company. On February 3, 1894, the executors made another deed to Augusta Lammrich, and thereby conveyed to her practically all the real estate of which the testator died seized, except

that which they had previously conveyed to her by the deed of December 30, 1891. The consideration expressed in this last deed was $50,000. This deed was also a voluntary one. The deed was not executed to consummate an actual sale made of the real estate by the executors to Augusta Lammrich. She had not bought the real estate described in the deed, or any part thereof, and she paid the executors nothing for such conveyance. On the same day this deed was made to Augusta Lammrich she mortgaged the same to Milton T. Barlow, to secure the payment of a note of $16,000, payable to Barlow and executed by Augusta Lammrich, Edmund Paulsen, Anna C. Paulsen, the testator's widow, Herman F. and Henry K. Paulsen. Subsequently Augusta Lammrich conveyed the real estate mortgage to Barlow back to the executors, subject to the Barlow mortgage. The $16,000 note held by Barlow belonged to the United States National Bank. Barlow was the cashier of the bank and its trustee in this transaction. The Arlington State Bank, the Blair State Bank, and the Omaha National Bank brought this suit in the district court of Douglas county. The Omaha Loan & Trust Company, United States National Bank, Milton T. Barlow, the widow and heirs of John T. Paulsen, deceased, and the executors of his will, and others were made parties to the action.

We state the material averments of the petition of the Arlington State Bank, as the petitions of the Blair State Bank and the Omaha National Bank are the same: The Arlington State Bank, in its petition, set out, among other things, the facts hereinbefore detailed, and further averred that, prior to the execution of either of the two deeds by the executors to Augusta Lammrich, Paulsen's widow and his sons, Edmund, Herman, and Henry, became and were justly indebted to the Arlington State Bank; that it brought a suit upon the evidence of such indebtedness and recovered a judgment; that it caused an execution to be issued thereon, which was returned wholly unsatisfied. The petition of the Arlington State

Bank then charged that the executors had never at any time sold or disposed of the real estate, or any part thereof, of which John T. Paulsen died seized; that no consideration whatever was paid for the conveyances made by the executors of the testator's real estate to Augusta Lammrich; that the purpose for which such conveyances were made was that Augusta Lammrich might incumber the same by mortgages to the trust company and the United States National Bank; that the trust company and the United States National Bank had full knowledge and notice that Augusta Lammrich had parted with no consideration for the conveyances made to her of the testator's real estate; that the trust company and the United States National Bank knew the purpose for which the executors made such conveyances to Augusta Lammrich, and that such conveyances were unauthorized and invalid, since, by the provisions of the will of John T. Paulsen, his executors had no power or authority to mortgage his real estate, or any part thereof, for any purpose, and no power to make a conveyance thereof, except in consummation of an absolute sale made by them; that the conveyances made by the executors to Augusta Lammrich and the mortgages made by her on such real estate to the trust company and the United States National Bank were made and accepted for the fraudulent purpose of preventing it from collecting the debt owing to it by its judgment debtors. The prayer of the petition was for a decree canceling and annulling the two deeds made by the executors to Augusta Lammrich and the two mortgages made by her to the trust company and the United States National Bank, and for other, further, and general relief. The widow and all the heirs and executors of the testator answered this petition of the Arlington State Bank, admitting the making of the two conveyances by the executors to Augusta Lammrich and the execution of the mortgages by her to the trust company and the United States National Bank; denied that the conveyances made by the executors were with-

out consideration; alleged that they were made for a good and valuable consideration, and denied that there was any fraud intended or practiced by any of the parties to said transaction. The Omaha Loan & Trust Company, by its answer, among other things, admitted the execution of the conveyances by the executors to Augusta Lammrich and the execution by her to it of the mortgage of December 31, 1891, and denied all allegations of fraud. The United States National Bank, in its answer to the petition of the Arlington State Bank, admitted the execution and delivery of the deed by the executors to Augusta Lammrich on February 3, 1894, the execution and delivery by Augusta Lammrich to Milton T. Barlow for it, the United States National Bank, of the $16,000 mortgage of said date; denied all allegations of fraud, and affirmatively averred that at the time of the testator's death he was indebted to the United States National Bank in the sum of $12,000, and that the mortgage made to Barlow for it by Augusta Lammrich was made to secure this $12,000 and a further sum of $4,000 advanced by the bank to the executors and used by them in paying the debts of the testator's estate.

The district court found, among other things, that there was no fraud intended or practiced by any of the parties in the execution of the two deeds by the executors to Augusta Lammrich and her execution of the mortgages to the trust company and the United States National Bank, and that such mortgages were valid and first liens upon the property therein described; that the Arlington State Bank and other judgment creditors had liens upon the interests of their debtors in the real estate of the testator, subject to the liens of the trust company and the United States National Bank's mortgages, and entered a decree accordingly. The Arlington State Bank, the Blair State Bank, and the Omaha National Bank have appealed.

1. A question presented by the record, and one much discussed by counsel, is, in whom did the legal title to the

testator's real estate vest upon his death?  Did the execu-
tors take the legal title or did the heirs?  The will of the
testator contains no language which in express terms
would vest the title, either in the executors or the heirs.
The will declares that the executors shall pay the testa-
tor's debts out of money on hand at his decease and
money derived from debts owing to him, and if these
sources should prove insufficient, the executors are di-
rected to pay the remainder of his debts from the sale of
his lands, or a part thereof.  In case of a sale of any part
of the testator's real estate for the purpose of paying his
debts, the executors are directed and empowered to con-
vey the parts sold by deed.  After the payment of his
debts, the executors were directed and authorized to sell
and convey any or all of his real estate and divide and pay
over the proceeds of such sale in certain proportions to
certain heirs.  Whether the heirs or executors took the
legal title to the real estate of the testator upon his
death is not to be determined solely by the presence or
absence of some particular language of the will; and
the courts cannot say that the executors did not take
the legal title and that the heirs did, solely because no
apt language is found in the will expressly declaring
that the executors should have the legal title.  The ques-
tion is to be determined by ascertaining from an exam-
ination of the entire will of the testator what his inten-
tions were.  If the cardinal object, intention, and purpose
of the testator in making disposition of his property
can be effectuated only by having the legal title to the
property vested in the executors, then the will will be
given such a construction as will carry out the lawful
intentions of the testator; and the presumption must be
indulged that the testator gave his executors all the
power necessary to carry out his intentions.  As was said
by SULLIVAN, J., in *Weller v. Noffsinger*, 57 Neb. 455:
"No rule of law is better settled or more in accord with
good sense than that which requires the intention of the
testator to be ascertained from a liberal interpretation

and comprehensive view of all the provisions of the will. No particular words, no conventional forms of expression, are necessary to enable one to make an effective testamentary disposition of his property. The court, without much regard to canons of construction, will place itself in the position of the testator, ascertain his will, and, if lawful, enforce it." As we construe the will in this record, we think the testator had in view two things: (1) The payment of his debts, and (2), after his debts were paid, the conversion of his real estate into cash and a distribution thereof in certain proportions among certain heirs; and though the will does not in express terms say that the executors shall have the legal title, still, we think, they could not carry out the testator's intentions, unless they were invested with the legal title to his real estate. They were to sell this real estate and make deeds of conveyance to the purchasers whether they sold the land to pay debts or sold it for the purpose of distributing the proceeds among the legatees and heirs. We think, therefore, that in this case the legal title to these lands upon the death of the testator vested at once in his executors; that the title to no part of the testator's real estate descended to the heirs; that a conveyance or a mortgage by them of this real estate would be a nullity, as a real estate conveyance would cloud the executors' title, and, if effective for any purpose, could be held to be nothing more than an assignment of such heirs' interest in the estate of the testator. In support of these views see *Hale v. Hale*, 33 N. E. Rep. [Ill.] 858; *Wicker v. Ray*, 8 N. E. Rep. [Ill.] 835; *Meek v. Briggs*, 54 N. W. Rep. [Ia.] 456; 2 Pomeroy, Equity Jurisprudence 1011.

2. Another question presented by the record is whether the two conveyances made by the executors of the testator's real estate to Augusta Lammrich were sales within the meaning of the testator's will. As already stated, these deeds to Augusta Lammrich were made without consideration. They were not in consummation of contracts of bargain and sale entered into between her and

the executors. She paid nothing, promised nothing, parted with nothing valuable for the conveyances, and if the conveyances were made to her upon the consideration that she would mortgage the real estate conveyed and then reconvey to the executors subject to that mortgage, the conveyances to Augusta Lammrich were still without consideration. The will conferred no power upon the executors to make a gift of the testator's real estate to any one. Their power was to convey only to an actual *bona fide* money purchaser. The conveyances made by the executors to Augusta Lammrich were not executed in pursuance of, or in accordance with, the provisions of the will. They were not good executions of the powers conferred upon the executors, and as between Augusta Lammrich and her grantees with notice, the testator's estate, the creditors of that estate, and the creditors of the beneficiaries of that estate, those conveyances were voidable. (*Trudo v. Anderson*, 10 Mich. 357; *Hampton v. Moorhead*, 17 N. W. Rep. [Ia.] 202; *Dupont v. Wertheman*, 10 Cal. 354; *Taylor v. Galloway*, 1 O. 232; *Briggs v. Davis*, 20 N. Y. 15; *Russell v. Russell*, 36 N. Y. 581; *Ferry v. Laible*, 31 N. J. Eq. 566.)

3. This brings us to the contention of the trust company and the United States National Bank, that they are innocent purchasers or mortgagees of this real estate conveyed by the executors to Augusta Lammrich and entitled to protection as such. There are to this contention three answers: (1.) Although the district court made no finding upon that subject, we are constrained by the evidence, without quoting it, to hold that both the trust company and the United States National Bank actually knew that the executors had made the conveyances they did to Augusta Lammrich, not as a consummation of actual sales of the real estate to her but in order that she might execute the mortgages now held by the trust company and the United States National Bank. (2.) Assuming that the trust company and the United States National Bank did not actually know that this real estate

had been conveyed to Mrs. Lammrich without considera-
tion, still they should have known.   They were in pos-
session of such facts in the premises as should and would
have excited the suspicions of prudent men as to the
character of Mrs. Lammrich's title, and these inquiries,
if pursued with any diligence whatever, would have re-
vealed the fact that Mrs. Lammrich was a voluntary
vendee.   (3.)  Neither the trust company nor the bank
have, by either pleading or proof, shown, or made any
attempt to show, that they are innocent purchasers of
this property and entitled to the protection of that rule.
The bill filed by the appellants in this case set out the
fact of the conveyances by the executors to Mrs. Lamm-
rich, charged that these conveyances were without con-
sideration, that they were invalid because of want of
power in the executors to make them, and then charged
that the conveyances were fraudulently made and ac-
cepted.   The answer of the trust company and the United
States National Bank to this was a general denial.   Un-
der this pleading, evidence on their part tending to show
that they were innocent purchasers from Lammrich, had
they offered such evidence, would have been irrelevant.
That one is an innocent purchaser of real estate is an
affirmative defense, and though the bill charged in this
case that the trust company and the United States Na-
tional Bank had knowledge and notice that Mrs. Lamm-
rich was a voluntary vendee, it did not relieve the trust
company and the bank from the duty of pleading that
they were innocent purchasers, if they intended to rely
upon that defense.   The proof shows, without contradic-
tion, that the conveyances made by the executors to Mrs.
Lammrich was without consideration, and we think it
shows that the trust company and the bank had actual
knowledge of that fact.   Assuming, however, that it does
not, when the appellants showed that the conveyances
to Mrs. Lammrich were without consideration and void-
able as against them, then the burden was upon the mort-
gagees of Mrs. Lammrich to show that they took their

mortgages from her without knowledge of the defect in her title. Augusta Lammrich acquired no title to the real estate described therein by reason of the conveyances made to her by the executors, and she could convey to others no greater title than she herself possessed. The mortgages, then, of the trust company and the United States National Bank can only be sustained if they are innocent purchasers or mortgagees within the meaning of that rule. The doctrine of this court is that where a claim to real estate can be sustained only upon the ground that the person asserting it is a subsequent purchaser in good faith, such person is required to show affirmatively that he purchased without notice of the equities of another and relying upon the apparent ownership of his grantor. (*Bowman v. Griffith*, 35 Neb. 361; *Garmire v. Willy*, 36 Neb. 340; *Phœnix Mutual Life Ins. Co. v. Brown*, 37 Neb. 705; *Baldwin v. Burt*, 43 Neb. 245; *American Exchange Nat. Bank v. Fockler*, 49 Neb. 713; *Yeend v. Weeks*, 16 So. Rep. [Ala.] 165; *Rush v. Mitchell*, 32 N. W. Rep. [Ia.] 367; Pomeroy, Equity Jurisprudence sec. 784; *Bassick Mining Co. v. Davis*, 17 Pac. Rep. [Colo.] 294; *Weber v. Rothchild*, 15 Pac. Rep. [Ore.] 650; *Cunningham v. Erwin*, Hopk. Ch. [N. Y.] 48-54; *Richards v. Snyder*, 11 Ore. 501; *Lupo v. True*, 16 S. Car. 580; *Ferry v. Laible*, 31 N. J. Eq. 566.)

4. Another argument of the trust company and the United States National Bank is that since the title of the lands of which the testator died seized did not descend to his heirs, the judgments of the appellants here against those heirs are not liens upon any real estate of which the testator died seized, and therefore this action cannot be maintained. We agree with the contention that the title of the testator's lands at his death did not descend to and vest in his heirs, that the heirs have no such estate or interest in those lands as can be seized and sold upon execution or attachment, and that the judgments of the appellants are not liens upon those lands; but all this conceded, it does not follow that this

action cannot be maintained. The interest which the heirs have in the estate of the testator, though a contingent one, is still an interest—is property not exempt from being applied to the payment of their debts. The pleadings and the proof show that the appellants have recovered judgments against these heirs; that executions have been issued and returned wholly unsatisfied; that these heirs have interests in the real estate of the testator, which real estate the executors, in violation of their trust, have conveyed to another without consideration. The appellants cannot sell the interest of the heirs in this real estate on execution. They cannot seize such interest by attachment process. They cannot successfully garnish the executors, because by their wrong conduct they have, in effect, put the property in which the heirs have an interest out of their hands. The case then stands thus: The heirs are justly indebted to the appellants. The heirs have, or should have, property in the hands of the executors or trustees, and the latter have diverted it and unlawfully disposed of it. The appellants have exhausted all the legal remedies for the collection of their debts, and now it is said that this is the end of the law. If this is so, it is a reproach to our system of jurisprudence. But we do not think it is so. It has always been one of the powers possessed by courts of equity to compel the application of a debtor's unexempt property to the payment of his debts when the creditor had no other means of redress; and we have never before heard it doubted that a court of equity was invested with inherent power to prevent a trustee from diverting a trust fund, to set aside and annul conveyances and grants made by a trustee without consideration. In other words, when all other remedies have failed, a court of equity will, at the suit of a creditor, take the unexempt property of a debtor wherever found, in whatever condition it may be, and cause it to be applied towards the payment of his debt. In *Eliot v. Merchants' Exchange*, 14 Mo. App. 234, it was held that a

certificate of membership in the Merchants' Exchange of St. Louis was property and liable for the debts of its owner; that a creditor, having exhausted his legal remedies for the collection of his debt, might successfully appeal to a court of equity for the sale of the debtor's membership in the exchange and the application of the proceeds to the discharge of his debt. In *Ager v. Murray*, 105 U. S. 126, the supreme court of the United States held that a patent right might be subjected by a bill in equity to the payment of the judgment debts of the patentee. In *Ricketson v. Merrill*, 148 Mass. 76, a testator devised all his property to his executors to be sold and the proceeds divided between certain heirs, and the court held that the interest of a beneficiary before distribution and sale of the realty was not attachable, and that, as he had no other property, his judgment creditor could maintain a creditors' bill to compel the executor to apply the heir's interest to the payment of the creditor's debt. In *McGough v. Insurance Bank of Columbus*, 2 Ga. 151, it was said: "It is certainly true that where a creditor has exhausted his remedies at law and there are assets belonging to his debtor which he cannot get hold of, equity will assist him to reach and subject those assets to the payment of his judgment." In *Watkins v. Dorsett*, 1 Bland [Md.] 530, it was said: "Where a party cannot obtain relief, either by an ordinary execution or by the extraordinary process of outlawry or attachment by reason of the peculiar situation of the property or the equitable nature of the title to it, he may obtain relief by bill in equity." See generally as to the power of a court of equity to lay its hands upon and apply to the satisfaction of his debts every species of property belonging to a debtor: *Edmeston v. Lyde*, 1 Paige Ch. [N. Y.] 637; *Earle v. Grove*, 92 Mich. 285; *Edwards v. Edwards*, 24 O. St. 402; *Miller v. Davidson*, 3 Gil. [Ill.] 518; *Furlong v. Thomssen*, 19 Mo. App. 364; *Pickens v. Dorris*, 20 Mo. App. 1; *Millard v. Parsell*, 57 Neb. 178; *Galveston, H. & S. A. R. Co. v. McDonald*, 53 Tex. 516; *German Nat. Bank of Hastings v. First Nat. Bank of Hastings*, 55 Neb. 86.

5. A further contention of the appellees is that the conveyances made by the executors to Augusta Lammrich and the mortgages made by her to the trust company and the United States National Bank in effect constituted a mortgaging of the testator's real estate by the executors, and that the executors had power under the will to execute mortgages upon the testator's real estate for the purpose of raising money to pay the testator's debts. We assume, without deciding, that the legal effect of the transactions of the executors with Augusta Lammrich and her conveyances to the trust company and the United States National Bank was a mortgage of the testator's real estate by the executors. Whether the executors had power to mortgage the testator's real estate is, of course, to be determined from the intention of the testator on the subject as ascertained from an examination of the entire will. In support of the contention that the executors had power to mortgage counsel have cited us to the following cases: *Waterman v. Baldwin*, 26 N. W. Rep. [Ia.] 435; *Faulk v. Dashiell*, 62 Tex. 642; *McCreary v. Bomberger*, 24 Atl. Rep. [Pa.] 1066; *Kent v. Morrison*, 153 Mass. 137, 26 N. E. Rep. 427; *Loebenthal v. Raleigh*, 36 N. J. Eq. 169; *Williams v. Woodard*, 2 Wend. [N. Y.] 486; *Ayres v. Palmer*, 57 Cal. 309; *Pennsylvania Life Ins. Co. v. Austin*, 42 Pa. St. 263; *Zane v. Kennedy*, 73 Pa. St. 192. It would subserve no useful purpose to review all these cases. The doctrine of the Pennsylvania court is that an absolute and unrestricted power to sell includes power to mortgage, although no power to make the mortgage is expressly given to the trustee or executor. Aside from the Pennsylvania cases, we think the other cases cited by counsel in support of their contention are not in point here.

In the *Waterman-Baldwin Case* the debtor conveyed all his property to a trustee, "to sell and dispose of for the payment of his debts," and it was held that the trustee might execute a mortgage upon the property to secure the payment of money he had borrowed for the purpose

of redeeming a part of the debtor's land from a mortgage foreclosure sale. But the power of attorney in that case is broader than the will here. The power of attorney gave the trustee power to sell and dispose of, while the will in the case at bar conferred upon the executors only the power to sell.

In the *Faulk-Dashiell Case* the will gave the executors power "to sell, exchange, and dispose of," and it was held that the executors had power to mortgage. But it is to be observed that in that case also the executors had power, not only to sell, but to exchange and dispose of his estate; and the will in that case further invested the executors with full authority to control the estate, in their discretion, for the interest of the testator's children, in their education, etc.

In the *Ayres-Palmer Case* the trustee was given power to sell and convey or to mortgage the land. He conveyed it to J. B., upon no other consideration than that the latter would execute a mortgage upon the land for a sum of money, and the court held that the transaction was, in effect, a mortgaging of the land by the trustee, and that he was clothed with that authority by the power of attorney.

In the *Williams-Woodard Case* the trustee was authorized to bargain, sell, convey, and assure a tract of land, and the court held that he had authority to execute a life lease upon the land, the lease containing a provision for an eventual purchase of the land by the lessee.

In the *Kent-Morrison Case* the testator devised all his property to his wife, with "full power to sell and convey the same by deed (part or all of it), and the proceeds thereof are to be used for her comfort and otherwise as she may think proper." Upon her death the estate remaining undisposed of was to go to the testator's son. The court held that the power "to sell and convey" was an absolute and unrestricted power to sell for her benefit and in her discretion, and vested in her a power to mortgage the estate for her benefit.

51

But we do not regard these cases, or any of them, as of controlling authority here. In all the cases cited the executor or trustee was, by a fair construction of the will, clothed with authority, not only to sell, but to otherwise dispose of or mortgage the real estate; or the executor was invested with such control and management of the testator's property and such discretion in the premises as to clothe him with authority to execute a mortgage for the purpose of carrying out the testator's intention with reference to the disposition of his estate; or the executor was given such an interest in the property as authorized him to mortgage it for his own benefit. In the case at bar the executors were not directed to preserve as a whole the testator's estate, or any specific part of it, or to manage, control, collect the rents and profits thereof and distribute them to certain legatees. They did not receive this estate charged with the duty of raising and paying out of the same certain specific legacies. The executors were to pay the testator's debts out of his personal property. If that proved insufficient, they were authorized to sell and convey sufficient of the real estate to pay those debts; and after the debts were paid, they were to sell and convey all the testator's real estate and divide the proceeds in certain proportions among certain parties. This was a trust with a power of absolute sale, and, looking at the entire will of the testator, we do not think it can be said that he ever contemplated such a thing as his executors borrowing money to pay his debts and pledging his property by mortgage to secure the repayment of the money borrowed. The two transactions of a sale and a mortgage are essentially different: A power to sell implies that the trustee is to receive for the benefit of the testator's estate the value of the land in cash. Power to mortgage involves a right in the trustee to convey the land for a less sum than its value and hazard the entire estate for its repayment. The presumption is that a will which simply clothes the executors with "power to sell and convey" the testator's

real estate and make distribution of the proceeds to certain persons does not include the power to mortgage; but such presumption may be overthrown when an examination of the whole will shows that the disposition directed by the testator to be made of his property is of such a character as to authorize the inference that it was his intention that his executors should have power to mortgage his estate. The will may authorize the inference of such an intention, notwithstanding the language thereof vests the executors with only power to sell and convey, if the executors are charged with the preservation and retention of a certain part of the estate, with the control and management thereof, the collection of the rents and profits of the estate, with the making of improvements on certain parts of the real estate, or if the estate comes to them charged with a specific legacy which the executors are to pay out of the estate.

In *Ferry v. Laible*, 31 N. J. Eq. 566, the testator, who was a brewer, directed his executors to continue his business and to invest the interest and profits which they should receive therefrom in bonds and mortgages or in the purchase of real estate. The will also contained this clause: "And they shall also have the power to sell." The executors, on December 2, 1871, conveyed the testator's real estate to one Wiedenmayer, and nine days afterwards the latter executed a mortgage upon it for $65,-000. The executors made the deed to Wiedenmayer for the purpose of having him execute the mortgage, and the mortgage was executed for the purpose of paying debts which the executors had contracted in the conduct of the testator's business. The suit was to foreclose the mortgage. The vice chancellor said: "The primary purpose of the present suit is to compel the payment of this mortgage by a sale of the mortgaged premises. * * * Has it [the mortgage] any force against those who are entitled to the fee? It is not necessary to stop to inquire who they are. That question was not spoken to on the argument. It is enough for present purposes to know that all

persons now in being who can claim any estate or interest in the mortgaged premises are before the court as parties to this suit. The proofs show, quite incontestably, that the conveyance to Wiedenmayer was not made in consummation of an actual sale, but was a mere contrivance to enable him to execute a mortgage to the complainants. He accepted it under an arrangement that he should execute a mortgage to the complainants and then reconvey the lands. It is not pretended that a contract of sale and purchase was made, or that any price was agreed upon or consideration paid or given other than the execution of the mortgage to the complainants. Indeed, the parties to the transaction did not take the trouble to put on it the guise of a sale. No reference to authorities is required to show that this was not a valid exercise of the power given by the will. The executors were intrusted with power to make sale of the brewery premises in a certain contingency, but no power to donate the property nor to create preferences against it in favor of certain creditors, to the exclusion of others. If the executors used the power at all, they were bound to keep within its terms, and any attempt by them to exercise power in excess of that delegated must be held to be simply nugatory. Where the creator of a power defines the method of its execution, that method must be strictly followed, so far, at least, as may be necessary to give effect to his intent and design. This rule is fundamental. It is clear the conveyance to Wiedenmayer passed no title. * * * But it was very plausibly argued by the counsel of the complainants that the power to sell, conferred by his will, embraces also a power to mortgage, and that if he was right in this contention, the mortgage should be upheld as within the power, for, although not executed by the executors themselves, yet, having been executed by their grantee, to whom they conveyed the mortgaged premises for the purpose of having them mortgaged to the complainants, it should, in a court which deals mainly with the substance of

transactions, regardless of mere questions of form, be treated as the deed of the executors. My judgment rejects both propositions as thoroughly unsound. The last is much too devious, and too strongly marked by false suggestions, if not actual falsehood, ever to be recognized as the fit foundation of a judicial conclusion." The court held not only that the executors under the will had no power to mortgage the testator's real estate, but that the voluntary conveyance made thereof to Wiedenmayer was nugatory.

In *Hubbard v. German Catholic Congregation*, 34 Ia. 31, the congregation authorized a committee to sell certain real estate belonging to it and to execute a deed to the purchaser therefor in order to raise a fund for the purpose of paying the debts of the congregation. The committee executed a mortgage on the property to the various creditors of the congregation to secure the payment of their debts, and the court held that the mortgage was void for want of power in the committee to execute it.

In *Taylor v. Galloway*, 1 O. 232, a will provided: "All the rest of my estate I leave to be sold as my executors hereafter named shall think best, and the moneys arising from such sale I give unto my infant daughter." The executor entered into a contract with Taylor in and by which the latter was "to change the locations, to redeem such parts of the land as had been sold for taxes, and to do whatever might be necessary to secure the property and perfect the title, in consideration of which Taylor was to have an equal moiety of the land," and the court held that the contract was a nullity. The court said: "But the most important question is whether the contract made with the complainant Taylor be such a sale as was contemplated or authorized by the will. The manifest design of the testator was to convert the whole of his estate into money for the benefit of his infant daughter. The trustees are not authorized to exchange or incumber the land or to dispose of any part of it to perfect a title to the residue. The power is to

sell, and the sale must be for money. It may be said that the contract with Taylor was a sale, and that he is a purchaser for a valuable consideration. This is technically true, as it would have been if the executor had conveyed to him a moiety of the land as a reward for effecting a sale of the other moiety. But it is presumed that such a sale would not be valid, as it would defeat the object of the testator. The power must be strictly pursued and must be executed according to the manifest intent of the testator." To the same effect are: *Morris v. Watson*, 15 Minn. 165-212; *Hoyl v. Jaques*, 129 Mass. 286; *Wood v. Goodridge*, 6 Cush. [Mass.] 117; *Switzer v. Wilvers*, 24 Kan. 384; *Albany Fire Ins. Co. v. Bay*, 4 N. Y. 1; *Price v. Courtney*, 87 Mo. 387.

In *Bloomer v. Waldron*, 3 Hill [N. Y.] 361, Medcef Eden died leaving a will, which provided: "I give to my wife, so long as she shall remain single, * * * full power and authority to sell and convey all or any part of my real estate, provided * * * Aaron Burr shall in writing * * * approve and consent to such sale. * * * The moneys from all such sales to be vested and secured in such manner as the said Aaron Burr shall direct." The widow executed a mortgage on the testator's real estate with the consent in writing of Aaron Burr, and the court held that the will conferred upon the widow the power to sell and convey the testator's lands and invest the proceeds; that the widow was required to sell for cash or something equivalent thereto; that the widow had no authority to mortgage, and that the mortgage executed on the lands by her was utterly void.

6. Another contention of the appellees is that though the conveyances made by the executors to Augusta Lammrich were void for want of consideration, still such conveyances operated to transfer to her the interests which the heirs signing such conveyances as executors had in the property of the testator. One answer to this contention is that the title of the testator's real estate,

upon his death, descended to and vested in the executors and not in his heirs, and though the executors who executed the conveyances to Augusta Lammrich were the heirs of the testator, those conveyances were absolutely valueless as real estate conveyances. A second argument to the contention is that the conveyances made by the executors were by them and their grantees intended to convey to Augusta Lammrich the fee simple title to the lands. It was not the intention of any of the parties thereto that those conveyances, or either of them, should operate as an assignment to Augusta Lammrich of the interest which the heirs of the testator had in his real estate. In support of the contention under consideration counsel cite us to the following cases: *Hitchcock v. Southern Iron & Timber Co.*, 38 S. W. Rep. [Tenn.] 588; *Post v. Robinson*, 10 Mass. 131; *Heard v. Hall*, 16 Pick. [Mass.] 457; *Favill v. Roberts*, 50 N. Y. 222; *Lee v. Getty*, 26 Ill. 77. We do not think the cases cited support counsel's contention, and a review of two of them must suffice.

In the *Favill-Roberts Case* the executors of the will had no authority to sell the testator's real estate or to control it. But with the knowledge of the heirs he applied to the court and obtained an order authorizing him to sell, and with the consent and at the request of the heirs he made a sale of the real estate, conveyed it, received the purchase-money, the heirs at the time informing the purchaser that the executor was authorized to make the sale, and it was held that the heirs were afterwards estopped from asserting title to the land as against the purchaser at such sale.

In the *Heard-Hall Case* the guardian of a *non compos mentis*, in pursuance of a license of court therefor, sold his ward's real estate and conveyed the same to the purchaser with a covenant that he, the conservator, was duly authorized to sell the premises. It was held that this covenant estopped the conservator from afterwards claiming in his own right a portion of the real estate under a previous conveyance to him in his own right.

It is obvious that these cases are not in point here. They rest upon the principle of estoppel. It may be that the heirs who, as executors, executed the voluntary deeds to Augusta Lammrich could not maintain a suit as such heirs against her to annul those conveyances on the ground of want of consideration. Doubtless, a debtor who voluntarily conveys his real estate to another for the fraudulent purpose of preventing it being applied to the payment of his debts could not maintain a suit against such voluntary grantee to annul such a conveyance, but it does not follow that because the debtor would be estopped from maintaining such suit that his creditor would. In the case at bar the grantors of Augusta Lammrich described themselves as the executors of the testator. The deed made by them purported to convey the legal title which they possessed to Augusta Lammrich for a consideration equal to its value. Augusta Lammrich did not suppose she was buying the individual interest of the heirs who signed the deeds to her as executors, and it was not the intention of any party to that transaction that those conveyances should convey the interests which the heirs, as children of the testator, had in the lands. When the grantor is a donee of power, and also has an individual interest in the property, whether the conveyance shall be construed as an execution of the donee's power or a conveyance of the donee's interest is a question of intention, and if from the conveyance itself it is apparent that it was intended as an execution of the power, it will be so construed. (*Blagge v. Miles*, 1 Story [U. S.] 426; *Lee v. Simpson*, 134 U. S. 572; *Patterson v. Wilson*, 64 Md. 193; *Ritchie v. Putnam*, 13 Wend. [N. Y.] 524; *Munson v. Berdan*, 35 N. J. Eq. 376; *Owen v. Switzer*, 51 Mo. 322; *Funk v. Eggleston*, 92 Ill. 515.)

7. A further contention of the appellees is that the appellants did not become creditors of the heirs of the testator prior to the conveyances made by the executors to Augusta Lammrich. Authorities are cited to show

that a subsequent creditor cannot maintain an action to
set aside a voluntary conveyance made by his debtor
prior to the time of the contracting of the debt, where
the debt was not contracted with the intention of be-
coming indebted. This opinion is already too long, and
it must suffice to say that the evidence in the record
does not sustain the contention of the appellees that the
appellant's debts were not contracted prior to the con-
veyances made by the executors to Augusta Lammrich;
and it may very well be doubted if the rule that a cred-
itor whose debt is contracted after the voluntary alien-
ation of his debtor's property, the alienation not having
been made with intention to become indebted, has any
application to this case. Here the trustees of a fund
have misappropriated it,—have made a donation of it to
a third party,—and it would seem that the creditors of
the beneficiary of this fund, irrespective of the time when
their debts were contracted, and irrespective of the ques-
tion as to whether the misappropriation and donation
of the fund was made by the trustees for a fraudulent
purpose, might successfully invoke the aid of a court of
equity to annul the wrongful disposition made of this
trust fund and restore it to the trustees of the beneficia-
ries and apply it to the payment of the latter's debts.

8. It remains to be said that since the title to the testa-
tor's lands, upon his death, vested in his executors, the
appellant's judgments are not liens thereon. This suit
then must be treated as an equitable garnishment
brought by appellants against the executors of the testa-
tor's estate to reach the interest of the beneficiaries
therein who are debtors of the appellants.

9. A final contention of the trust company and the
United States National Bank is that a part at least of
the moneys advanced by them on their mortgages was
actually used in paying the debts of the testator's estate,
such as claims allowed against the estate by the probate
court, taxes upon the real estate of which the testator
died seized, and paying debts secured by mortgages upon

the real estate, and which debts were not included in the claims allowed by the probate court against the testator's estate, and therefore they are entitled in equity to be subrogated to the rights and liens of the holders of the debts which the money advanced by them discharged. This doctrine of subrogation has been several times considered by this court. The cases of this court bearing upon the subject are: *Washburn v. Osgood*, 38 Neb. 804; *Rice v. Winters*, 45 Neb. 517; *Brownell v. Stoddard*, 42 Neb. 177; *Guthrie v. Ray*, 36 Neb. 612; *Betts v. Sims*, 35 Neb. 840; *Bohn Sash & Door Co. v. Case*, 42 Neb. 281; *South Omaha Nat. Bank v. Wright*, 45 Neb. 23; *Skinkle v. Huffman*, 52 Neb. 20; *Hubbard v. Knight*, 52 Neb. 400; *Ocobock v. Baker*, 52 Neb. 447; *Chicago Lumber Co. v. Anderson*, 51 Neb. 159; *Porter v. Ourada*, 51 Neb. 510; *Seieroe v. Homan*, 50 Neb. 601; *Aultman v. Bishop*, 53 Neb. 545; *Hoagland v. Green*, 54 Neb. 164.

10. In some of these cases the litigants were adjudged to be entitled to the protection of the rule of subrogation; in others they were denied its protection. The decision in each case was controlled by the particular facts, circumstances, and equities therein. In the case at bar all the claims allowed by the probate court against the estate of the testator became liens upon his lands, the taxes against his real estate were liens upon his land, and some of his lands, at the time of his decease, were incumbered by real estate mortgages given to secure the debts of the testator, and these secured debts were not among the claims allowed by the probate court against his estate. The interests which the testator by his will gave to his heirs in his real estate were burdened with these liens. The evidence before us shows conclusively that a part of the moneys, at least, advanced by the United States National Bank and the trust company was actually applied to the payment of debts allowed by the probate court against the testator's estate, was actually applied to the discharge of taxes, which were valid liens against the lands of the testator, and actually applied to the dis-

charge of debts secured by real estate mortgages upon the testator's real estate, and which latter debts were not included within the claims allowed against the estate by the probate court. This doctrine or rule of subrogation is not a fixed and inflexible rule of law or equity. It does not owe its origin to statute or custom. It is a creature of the equity courts, invented and applied by them to do justice or prevent an injustice being done in a particular case and under a particular state of facts, where the law is powerless in the premises. This trust company and this United States National Bank, the district court has found, and the evidence sustains the finding, in all these transactions acted in good faith. Now, is it equitable, is it just, to turn over this estate to the beneficiaries discharged of the liens and burdens which existed against it when their interests in the estate attached and compel the corporations that have furnished the money in good faith to discharge these liens and burdens to bear the entire loss? If the corporations are subrogated to the rights of the creditors of the estate at the time the interest of the beneficiaries therein attached, certainly no injustice will be done the beneficiaries. All the parties interested in this estate are before this court; the heirs and the beneficiaries under the will are here; the executors are here, and not one of them is objecting to the trust company and the United States National Bank being given the protection of this rule of subrogation. Only the creditors of the beneficiaries are objecting, but their claims upon the interests of the beneficiaries were subordinate to the debts of the testator against his entire estate; and if the corporations be subrogated, the creditors of the beneficiaries have not been deprived of any right. We therefore think that the peculiar facts and circumstances in this case warrant us in holding that the trust company and the United States National Bank should be awarded judgments against the testator's estate, to be certified to the probate court and paid in due course of the execution of the testator's will,

for all moneys advanced by them on their mortgages which they can show were actually paid: (1) To pay and discharge claims allowed by the probate court against the testator's estate; (2) all the moneys that were actually used in paying debts of the testator secured by mortgages upon his real estate, and which debts were not embraced in the claims allowed against the estate by the probate court; and (3) all such moneys as were actually used in paying taxes against the real estate which were legally levied against and were liens thereon, except the taxes against the real estate set apart by the will as a life estate for the widow. In *Blodgett v. Hitt*, 29 Wis. 169, an administrator's sale of his intestate's real estate was held void for want of jurisdiction and authority in the administrator to make it. The money paid by the purchaser to the administrator was applied to the payment of a mortgage existing against the land executed by the intestate and to the payment of other debts existing against the intestate's estate. The heirs of the intestate brought ejectment for the land against the purchaser at the administrator's sale. As already stated, the court held that the administrator's sale was void, but subrogated the purchaser to the rights of the holders of the claims against the real estate which had been discharged with the money paid by him at the administrator's sale. Whether the administrator had jurisdiction or power to make that sale was a question of law which the purchaser at the sale was bound to know; and if he purchased, believing that the administrator had jurisdiction, his mistake was one of law. In the case at bar the trust company and the United States National Bank advanced their moneys, believing that the voluntary conveyances made to Augusta Lammrich would support a mortgage made by her. This was a mistake of law. In the Wisconsin case the court held that the purchaser was entitled to subrogation upon the natural and inherent justice of the case, that it would be inequitable and unjust to permit the heirs to recover the estate discharged

of liens existing thereon when the title came to them and which had been discharged with the moneys of the purchaser. The same ruling was made by the supreme court of Missouri in *Valle's Heirs v. Fleming's Heirs*, 29 Mo. 152. (See, also, *Pelts v. Clarke*, 5 Pet. [U. S.] 480; *Howard v. North*, 5 Tex. 315; *Hudgin v. Hudgin*, 6 Gratt. [Va.] 320; *Bright v. Boyd*, 1 Story [U. S. C. C.] 478; *Dufour v. Camfranc*, 5 Martin [La.] 656; *McLaughlin v. Daniel*, 8 Dana [Ky.] 182; *Sidener v. Hawes*, 37 O. St. 532; *Jones v. French*, 92 Ind. 138; *Bunts v. Cole*, 7 Blackf. [Ind.] 265; *Matteson v. Thomas*, 41 Ill. 110; *Betts v. Sims*, 35 Neb. 840.) We are not deciding that one who advances or pays money is entitled to the protection of the rule of subrogation because he acted under a mistake of law. We rest our decision here that these corporations are entitled to subrogation upon the broad principle that to deny to them, under the facts and circumstances in this record, would violate the plainest principles of ordinary justice.

The decree appealed from is reversed and the cause remanded, not for a retrial, but with instructions to the district court to enter a decree (1) canceling and annulling the two conveyances made by the executors to Augusta Lammrich on December 30, 1891, and February 3, 1894; the two mortgages executed by Augusta Lammrich on December 31, 1891, and February 3, 1894. (2.) To take evidence and determine what amount of the moneys advanced on the trust company and Barlow mortgages was actually applied to the payment of debts allowed against the testator's estate by the probate court, the amount actually applied to the discharge of the debts of the testator which were secured by liens upon his real estate at the time of his death, the amounts that were actually applied to the payment of taxes which were liens upon his real estate, not including taxes on the real estate set apart by the will as a life estate for the widow, and to award the trust company and the United States National Bank severally judgments for such sums, to

draw seven per cent interest from the time they were advanced, against the estate of the testator, and certify them to the probate court, to be paid in due course of administration of the estate and paid in the original order of their priority. (3.) To enter a decree against the executors of the estate, requiring them, after the sale of the testator's land and the payment of the debts allowed against the estate and the costs of administration, to pay into the district court the proceeds arising from the sale of the testator's property which, under the will, would belong to the heirs who are judgment debtors of the appellants.

REVERSED AND REMANDED.